Judge Ewing
delivered the Opinion of the Court.
The appellant, claiming to be the widow and heir of Mingo Stover, upon notice to the appellees, at the September term of the Fayette Circuit Court, moved said Court, to quash a sale of a house and lot in Lexington, made under their executions, issuing from said Court, No. 836, 837, and 838, in favor of Joseph and George Boswell and Spencer Cooper, trading under the name and firm of Spencer Cooper & Co., which motion was overruled by the said Court, and judgment rendered against the appellant for costs. Which opinion of the Court being excepted to, and the evidence spread on the record, the case is brought, by appeal of the plaintiff to this Court.
It appears by the return of the officer, that said house and lot was sold at public auction, on the 19th September, 1831, at two hundred and five dollars, to George Boswell, one of the plaintiffs' in the executions, who directed satisfaction to be entered on the executions, in full for the full amount of the same; which amounted, in all, only to the sum of one hundred and thirty four dollars thirty five cents; and that a balance was left in said Boswell’s hands, due to said Mingo Stover, of *233 •seventy dollars sixty five cents, which was enjoined in his hands, by one Gilbert vs. Stover.
Marriage «nay be circumstances— (except in prosecutions ibr bigamy and actions for crim. con.) as from cohabitation, reputation and acknowledgment of the parties Sfc., and this general rule must apply to free persons of color, as well as to whites.
The widow inherits the husband’s estate, when ho leaves no other kindred. Stat. Law, 561.
It further appeared in evidence, that the lot was susceptible of a division, and that a part could have been stricken off, without injury to the balance, that was worth, and would have commanded, the whole amount -of said executions and costs.
it also appears, that said Mingo was, many years ago, a slave, that he was emancipated by his master, and claimed the appellant and cohabited with her as his wife; that the appellant and her first child was emancipated by her master; that after their emancipation, said Mingo and the appellant lived and cohabited together as man and wife, for many years, and was generally recognized as such, until, in 1828, they quarrelled, and said Mingo took up with another woman, and left the state for New Orleans, where he died; that prior to his separation from the appellant,, he had three children by her, to whom he made a deed -of gift of said house and lot, after which, they died.
It is contended, first — that said appellant has not such interest m the house and lot as to be entitled to sustain this motion. She claims an interest in the same as widow of said Mingo, deceased, and as heir. Though no marriage is proven, she was for many years recognized and generally reputed to be his wife, and he cohabited with her as such. Cohabitation, reputation, acknowledgment of the parties, and living together as man and wife, are sufficient, generally, in all cases — except, in cases of prosecutions for bigamy, and in actions of crim. con. to establish a marriage between free white persons. 4. Johnson, 53. And we cannot perceive any good or valid reason, why the same rules may not be made to apply to free colored persons. If Mingo was ■her husband by reputation, and cohabitation, she has perhaps a dower interest in said house and lot. But as it has been doubted by respectable authority, whether the wife of a marriage defacto, could be endowed, and as it it unnecessary to determine the question in this case, we will proceed to show that she has a fee simple inter *234 est in the house and lot, as heir to Mingo, or as heir to her children.
Bastards, by the common law, have no inheritable blood. But, by a statute of Ky. (S. L. 565,) they are capable of inheriting and transmitting inheritances on the part of the mother.
The mother does not succeed to the real estate, which an infant, dying without issue, derived from his father, if there be any brothers or sisters of the infant, or of his father, or descendants of any such brothers or sisters. (S. L. 562.) But when the infant leaves no such relations, the mother takes the estate.
It does not appear, that Mingo had, at his death, any other lineal or collateral relations, but his reputed wife, the appellant, capable of taking by descent from him. Indeed, the presumption is pretty clear, that he had no other. And if he had no other, and the appellant was his wife, the whole fee simple estate in the lot, is cast, by the twelfth section of our statute of descents, upon her.
But if no marriage existed between them, de jure, or defacto, his children were bastards, and as such, could not inherit from, or transmit inheritance to him.
The house and lot, as has been stated, was conveyed by him, in his lifetime, to his three children by the appellant. Those three children have died in their infancy, and if they were bastards, by the principles of the common law, they have no inheritable blood, and could neither receive from, or transmit an inheritance to their father, mother, brothers or sisters. But by the 19th section of the act of 1796, (1. Digest L. K. 180,) it is provided, “that “ bastards shall be capable of inheriting, or transmitting “ inheritance, on the part of their mother, in like man* “ ner as if they had been lawfully begotten of such “ mother.” By virtue of this statute, in derogation of the common law rule, she may inherit from, and transmit an inheritance to, her bastard children.
But it may be urged against her inheriting the said estate from her children, that the house and lot was derived by purchase from their reputed father Mingo; and that the fifth section of the statute of descents provides, that when an infant shall die without issue, having title to any real estate of inheritance derived by purchase or descent from the father, the mother of such infant shall not succeed to, nor enjoy the same, if there be living any brother or sister of such infant, or any brother or sister of the father, or any lineal descendent of either of them. If they be bastards they have no father, in legal contemplation; they are nulliusfilii. Mingo may be their reputed father, but for all inheritable purposes he is not their father. If they have no father then,, there cannot be any brothers or sisters of their father *235 or any lineal descendants of either of them; and they, in fact, as well as law, have no brothers or sisters of their own, living. The object of the Legislature, in the enactment of the fifth section, was evidently to prohibit the estate of an infant from being cast upon the mother, when the same had been derived from the father, in those cases only where .the infant had living, at his death, brothers or sisters, or brothers or sisters of the father, or any lineal descendent of either of them, who were capable of inheriting from said infant. But in cases in which there were none such, then was the estate permitted to pass to the mother, in like manner as if the same had not been derived from the father.
Where a Sheriff,, under an execution levied upon-land, sells more (when the tract or lot is susceptible of division), than is necessary to satisfy the execution, he exceeds his authority, and the sale is- void.
A motion to-quash the sale,, by which the return may also be set aside, is the best remedy, in 6uch a case.
We are, therefore, clearly of opinion, if said deed of gift be valid (and which has not been questioned) and said Mingo was not the husband of said appellant, that upon the death of said children, the descent in fee simple was cast upon the appellant, and she alone is interested in sustaining the said motion.
Upon the merits of the .case, we have as little doubt that said sale should be quashed.
It has been repeatedly settled by this Court, that if a sheriff sells more land, in a sale under execution, than is sufficient to satisfy the execution and costs, that the sale is void. The statutes authorizing the sale of land under execution, which are in derogation of the common law, do not authorize the officer to sell more land than is sufficient to satisfy the execution.. And a sale of moréis a sale without authority, and void. 3 Marshall, 619; 2 J. J. Marshall, 68. The last case was decided ©n a motion to quash the sale;: which is certainly the most regular mode to reach the injury and clear away the embarrassment from- the land — as the Court upon setting aside the sale, may also set aside the return of the officer, especially when- the purchase is made by a plaintiff in execution — and disencumber- the property pretended to be sold, as well as the execution, from the illegal and unauthorized act of the officer.
There is the less excuse in this case, for the attempt on the part of the officer to sell the whole house and lot? as it is evident, that it was not unsusceptible of a diision, and that a sale of a part would have commande A *236 the amount of tlje execution, without injury to the balance.,
A Sheriff levies-on land, Bells, unnecessarily, .the whole, which the plaintiff buys at more than the amount of the execution; another creditor of the: defendant„by bill in chancery, attaches the surplus in the purchaser’s hands* obtains a decree* and it is paid to him: it was contended. that, this, decree was aeon-firm ation of the sale; but not so held.
The sale was void, and nothing short of n writing executed, by the defendant,, and valid under the statute of frauds, would give it validity.
But it seems that after said sale, one Gilbert filed a bill, on a mortgage against said Mingo Stover, and the.said George Boswell, the purchaser, enjoining the surplus left in his hands by the- sheriff, over the amount of the- executions, and obtained a decree, directing an amount sufficient to pay his claim-, to be paid over to him by said Boswell, there still being left in Boswell’s hands about fifteen or twenty dollars of said surplus. And it is contended, that said sale is confirmed by said proceedings and decree-. We cannot concur in this doctrine-* There is nothing in- the decree confirms the sale, or directs it to be confirmed; nor is there any attempt on the- part of the- complainant to confirm it, unless the- direction in the decree, that a portion of the surplus money in- Boswell’s hands, shall be paid to the-complainant, shall be- regarded as a confirmation of the sale. Such order surely cannot work the miraculous effect of converting a void sale into a valid one. Indeed, had-Mingo-Stover himself, as complainant, obtained the order and decree of the Court, that the money in Boswell’s hand should be paid to him, we cannot conceive how such order and payment could render a void sale- good and valid.
Our predecessors in the case of Pepper vs. the Commonwealth, by Thornton, 6 Mon. 30, decided, that “a “ sheriff’s sale of more land than was-necessary to satisfy “ an-execution, can be ratified by the- defendant only, by “a writing valid within the statute- of frauds &c., and “ not by issuing an execution- on the- bond taken- of the “•purchaser for the surplus of the sale money.”
But if the- decree could have the effect of ratifying the-sale as to- Mingo Stover’s interest, it cannot most assuredly affect the- rights of the children, or of the appellant deriving title from them, through said deed of gift,,as they were not parties to the- record, nor privies, in this aspect- of the case.
It is therefore considered, that said judgment of the Circuit Court be reversed, and set aside, and that the said Court enter judgment on said motion, in conformity to the principles settled in this decision.