8bm606
f123	324

EJECTMENT.

Case 151.

## Remmington vs Lewis.

ERROR TO THE HARRISON CIRCUIT.

*Bastards.   Descents.   Husband and wife.   Presumptions.*

*September* 28.

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

Case stated.

THIS action of ejectment was brought on the demise of Nancy Lewis, to recover a small tract of land which she claims as heir to her husband, Alexander Lewis, who was a bastard, and survived his mother, but died without issue and intestate.

8m 606
94  216
8m 606
95  307

The defendant claims the land also as heir by reason of his being the son of the same mother as Alexander Lewis, and also resists the claim of the lessor on the ground that she has no title as wife, and is not, by law, the heir of her deceased husband, because there is not such total failure of the kindred of her husband as makes the case in which, by law, the estate is directed to pass to her.   The question, of course, arises under the statute of descents.

Alexander Lewis having died without issue and without legal brothers or sisters, or other legal kindred on the father's side and after the death of his mother, his estate, if he had been legitimate, would have passed, by the statute of 1796, (1 *Stat. Law,* 563–4,) to his kindred on the mother's side, first to the grand-father, (Sec 8,) and if there were no grand-father, then to the grand-mother, uncles and aunts on the same side and their descendants, or such of them as there be, (Sec. 9,) and so on without end, passing to the nearest lineal male ancestors, and for want of them, to the lineal female ancestors in the same degree; and the descendants of such male and female ancestors, or such of them as there be. (Sec. 12.)   And if there be no such kindred, the whole shall go to the wife or husband of the intestate. (Sec. 14.)   The eighteenth section declares that bastards shall be capable of inheriting or transmitting in-

heritance on the part of their mother, in like manner as if they had been lawfully begotten of such mother.

Under this statute it was decided by this Court, in conformity with a previous decision of the Supreme Court of the United States, that the legitimate children of a bastard's mother, were not such brothers and sisters of the bastard as to prevent the estate which had descended from the bastard to his legitimate son, from passing to the mother of the bastard's son dying under age and without issue, after the death of the bastard's mother: *Scroggin* vs *Allan*, (2 *Dana*, 363.)   The consequence of which was, that the wife of the bastard took by descent from her infant son, the estate descended to him from the father, though the fifth section of the statute interdicts the mother in such case, if there be any brother, sister or their descendants, either of the infant decedent or of his father, from whom the estate had descended to him.   Another consequence was, that the mother would take the estate of her legitimate adult son, dying intestate and without father or issue, to the exclusion of her illegitimate children, though the fourth section of the act prescribes that if there be no father, the estate shall go to the mother, brothers and sisters, and their descendants.

It seems to have been decided in *Stover* vs *Boswell, &c.* (3 *Dana*, 234,) that under the eighteenth section of the statute, the mother of a bastard might inherit from and transmit an inheritance to her bastard children, and that she inherited the estate conveyed to them.

But the inference from the two previous decisions is, that the mother could not inherit from her bastard child, but that the whole effect of the eighteenth section of the act of 1796, in reference to bastards was, to enable them to take by inheritance, from or through their mother, in the direct line, and to pass an inheritance in the same line, to their own issue.   The three cases seem to concur in the doctrine that in view of the statute of descents of 1796, a bastard has no legal kindred except in the descending line from himself, and in the direct ascending line through the mother.   And in this state of the law as interpreted by the decision upon the statute

By the statute of 1896, (18 sec.) the mother could not inherit from her bastard child. The statute only enabled them to take from or through her on a direct line, and to pass an inheritance to their own issue, (3 *Dana*, 232; 2 *Ib.* 363.) But by the act of 1840, the mother may inherit from her bastard issue, (3 *Stat. Law*, 211,)

REMMINGTON
*vs* .
·LEWIS.

*and the brothers and sisters born out of wedlock, may inherit from each other; but makes no provision for inheritance between legitimate and illegitimate children of the same mother.*

of 1796, the Legislature, in 1840, passed an act, (3 *Stat. Law*, 211,) declaring in effect, that the mother shall be capable of inheriting as heir of her bastard child, and that brothers and sisters born of the same mother out of wedlock, shall be capable of inheriting from each other as though born in wedlock, and as brothers and sisters of the whole blood, but making no provision for inheritance between legitimate and illegitimate children of the same mother.

It is impossible, upon any admissible construction of the language of this act, to consider it as establishing a legal relationship for the purpose of inheritance between a bastard and any other of his natural relations but his mother and such other illegitimate issue as she may have. And we do not feel at liberty, on any conjectural motives of justice or policy, to assume that the Legislature intended to eflect any object not embraced in a fair construction of the statute, nor can we, upon any such assumption, extend the operation of the act. Assuming that prior to this act, there was no right of inheritance either between bastard children of the same mother, or between them and her legitimate children, the fact that the act expressly establishes the right in the former case and makes no mention of the latter, is equivalent to a direct exclusion, unless there be some other provision of the act which may be construed as establishing the right in the case not expressly provided for. But there is no provision in this statute which can be so construed, and therefore, none which can repel the inference of an intention to discriminate between the two cases by providing for one and leaving the other as it stood before. If the Legislature supposed that in making the mother capable of inheriting from her bastard child, they established a right in her legitimate children to inherit through her from her illegitimate children, on the principle that he who is heir to the father (or mother,) is heir to the son, the same principle would have led to the conclusion that the illegitimate children would inherit from each other, and that all the children of the same mother, both legitimate and illegitimate, being alike capable of inheriting from her,

would be heirs to each other. In this view there would have been no necessity for any further provision after making the mother capable of inheriting from her illegitimate children. But not only does the fact that an express provision is made for one class of children, tend to show that the act was not framed on the principle referred to, but by the same law in which the principle is found, the descent between brothers and sisters is not through the common ancestor, but direct and immediate, and therefore, not governed by this principle. And moreover, the case of *Stover* vs *Boswell, supra,* which recognizes the right of the mother to inherit from her bastard child, also asserts or recognizes the principle that notwithstanding this right in the mother, her bastard child can, in point of law, have no brothers and sisters. There is no ground, therefore, for assuming that the Legislature supposed that the first provision of the statute would operate, or that they intended that it should operate to make the legitimate children heirs to the illegitimate children of the same mother. Without further discussion of the subject, we are of opinion that the act of 1840 must be limited by its own terms, to the establishing the right of the mother to inherit from her illegitimate child, and the right of her illegitimate children to inherit from each other, and that it does not operate to establish a right either in the illegitimate children to inherit from the legitimate, or in the legitimate children to inherit from the illegitimate.

We are thus again thrown back upon the act of 1796. And although if the eighteenth section of that act had stood until the present time, without judicial interpretation or additional legislation, we might have considered it as being susceptible of a more liberal construction than has been given to it in the cases above referred to; yet as it has been construed in those cases and by different tribunals, as giving no capacity to a bastard either to inherit or transmit inheritance, except in the direct ascending and descending line; to the exclusion of all collaterals, and as the act of 1840 is evidently based upon this construction, and would have been wholly superfluous, if under the act of 1796, bastards could

inherit from and transmit inheritance to collateral rela-
tions on the side of their mother, and especially if there
could be inheritance between illegitimate and legitimate
children of the same mother, we should not feel author-
ized to depart from the established construction, even
if the views presented in opposition to it were much
more conclusive than they are.

Under this construction the bastard has, in view of
the law of descents, no brothers or sisters except the
illegitimate children of the same mother. And no other
collateral kindred who can take his estate as heirs, and
upon his death without issue, without lineal maternal
ancestor alive, and without brother or sister, the ille-
gitimate issue of his mother or their descendants, his
wife if he leave one, is his heir under the fourteenth sec-
tion of the statute, and not the legitimate son of his
mother.

It may be necessary to remark on the fourth section
of the statute, which, in case there be no issue nor father
of the decedent, passes the estate to "the mother,
brothers and sisters and their descendants, or such of
them as there be;" that according to the principles on
which the statute has been heretofore construed, the ex-
pressions used in this and other parts of it to designate
the natural relations or kindred of any person referred
to, must be construed in reference to the common law,
unless a different construction is clearly indicated, and
that this section does not enable the mother or her de-
scendants to inherit from her bastard child. The eigh-
teenth section provides for the case of bastards giving
them a new capacity, which however, cannot control
the construction of any other section. In its general
provisions the statute refers to the lawful relations
which are described by its terms. A bastard might con-
tract marriage and have lawful issue. His issue, there-
fore, is embraced like any other, in the second section,
which passes the estate to the children of the decedent
or their descendants; and his wife is embraced in the
fourteenth section, which for want of father, mother,
brothers and sisters, and their descendants, and of other
paternal or maternal kindred, declares that the whole

A bastard has, in view of the law of, descents, no brothers or sis-ters, except the illegitimate chil-dren of the same mother—no col-lateral kindred who can take his estate as co-heirs—and dying without lineal maternal ances-tor, and without brother or sister, the illegitimate issue of the moth-er, or their des-cendants, his wife, if he have one, is his heir, under the 14th sec. of the stat-ute, and not the legitimate son of the mother.

The 4th section of the statute of descents, giving estate to the mother, where there is no issue nor father of the decedent, is to be construed in reference to the common law, & does not enable the mother or her descendants to inherit from her bastard chil-dren. The 18th section provides for the case of bastards, giving them a new ca-pacity, but does not control the construction of other sections. A bastard may contract mar-riage, and have lawful issue who

shall go to the husband or wife, &c. But the fourth section, which passes the estate to the mother, brothers and sisters and their descendants, does not apply to the case of a bastard, because in his case there are no legal relations or kindred coming under this description. No person, therefore, could under that section, claim the inheritance from a bastard. Otherwise, under this and the following section; not only the descendants but any one of the entire kindred of the mother might claim to inherit from her bastard son.

The fourteenth section intends to provide for a case in which there is no heir under other provisions of the statute. No other section except the second and the eighteenth, is applicable to the case of a bastard. When he died without children, no one could inherit from him on the score of kindred, unless his mother or other lineal ancestor in the maternal line could, under the eighteenth section. And, therefore, in the absence of any such ancestor, and if he died without issue, the case exists in which, under the fourteenth section, his wife, if he have one, takes the whole estate. The word "descendents," in the fourteenth section, refers to such persons only as might be heirs of the decedent, and the case provided for in that section may, therefore, exist, though there be descendants of the mother who could not be his heirs.

It follows that if the defendant, Remmington, was the legitimate son of Alexander Lewis' mother, he is not the heir, and the plaintiff is entitled, unless there be some illegitimate issue of the same mother.

The instructions given by the Court upon this branch of the case, are in conformity with these views and are, therefore, deemed correct. But we are of opinion that the Court erred in instructing the jury "that in the absence of any proof, the presumption of the law is in favor of the legitimacy of James Remmington," (the defendant.) The law presumes in favor of the legitimacy of a person born in wedlock. But although the law does not, in the absence of all proof, presume against the legitimacy of any person, we do not know that in the absence of all proof, there is in any particular case,

*Margin notes:*

REMMINGTON
vs
LEWIS.

are embraced by the 2d section—his wife is embraced by the 24th section, and takes under its provisions. But the 4th sec. does not apply to the case of bastards, because there is no legal relations coming under the description.

A bastard dying without issue, no person except the mother, or other lineal ancestor in the maternal line can inherit from him, under the 18th sec. But the wife under the 14th sec. takes the whole estate.

The law presumes children born in wedlock to be legitimate, it is a presumption of fact; but such presumption in the absence of all proof, is not such a presumption as will sustain a title founded on legitimacy.

a legal presumption sufficient to sustain a claim of title founded on the legitimacy. In this case the plaintiff was bound to make out title by showing that there was no other heir of her husband, and it appearing that there is a person who may be heir, and whose being heir or not, depends upon his being illegitimate, it was incumbent on the plaintiff to prove his legitimacy. There was, in fact, some proof from which the jury might draw an inference on the subject. And if in the absence of all proof, the law establishes any presumption, it cannot apply when there is proof on which the jury may decide. But if there be any presumption in the absence of proof, it must be a mere presumption of fact and of a very slight character. And the instruction is erroneous not only in making it a legal presumption, but also in the assumption that there was no proof. It was the province of the jury to weigh the evidence and the inferences arising on it, and the question of the illegitimacy or legitimacy of Remmington, should have been left to them.

We consider this instruction as calculated to mislead the jury, because it is abstract, and probably led them to found their verdict on the legal presumption of legitimacy asserted by the Court, instead of determining the question upon their own view of the evidence and of the inferences authorized by it.

Wherefore, the judgment is reversed and the cause remanded for a new trial in conformity with this opinion.

*Curry, Wall and Stevenson* for plaintiff; *J. Trimble* for defendant.