JAMES KINGSLEY, WILLIAM AND OSCEOLA KINGSLEY, PLAIN-
TIFFS IN ERROR, VS. ADEL E. BROWARD, FRANK BROWARD
ET. ALS., DEFENDANTS IN ERROR.

1. Where an estate is conveyed to A for life with remainder to B, B's
   remainder in fee passes from the grantor to B at the same time
   as the life estate of A in possession. No subsequent deed from
   the grantor can divest B of his estate in remainder, nor in any
   manner limit or qualify it.

2. A limitation of an estate to illegitimate children of the grantee
   thereafter to be begotten is void as against good morals and
   public policy.

3. Where a deed conveys real property in trust to Flora for life, re-
   mainder to Charles, her illegitimate son, his heirs and assigns, and
   provides that in case Charles dies without issue, then to any other
   "quarteroon children" Flora may have (not yet begotten), and
   their heirs and assigns ; "but in case Flora should die without
   leaving issue of such description, then the trustees to hold the
   property to and for the use of her heirs and assigns forever ;" it
   is held, that in law the "issue" of Flora means legitimate child-
   ren, and that after-born illegitimate children do not take under
   such deed ; and Charles dying without issue and afterwards Flora
   dying without legitimate issue, she having assigned and con-
   veyed the property after the death of Charles, her grantee holds
   as against her heirs.

Writ of Error to the Circuit Court for Duval County.

This is a writ of error to the Circuit Court for Duval
county, upon the judgment of Hon. James M. Baker, ref-
eree.

Plaintiffs in error commenced suit in ejectment against
John Broward and Adel E. Broward, his wife, to recover
three hundred acres of land in Duval county. John Brow-
ard dying *pendente lite,* his heirs above named were made
parties.

Defendants pleaded not guilty. The cause having been
referred, the referee upon the pleadings and proofs found

in favor of the defendants, and judgment was entered accordingly.

The following is a synopsis of the testimony:

Deed No. 1, put in evidence by defendants: under date of June 26, 1829, one Zephaniah Kingsley, of said county, made his deed, conveying ".all that tract of land in Duval county, Territory of Florida, known by the name of New Hope Plantation or Hollingsworth's; bounded by Goodby's Lake on the south, Ashley's old field on the north, and the river St. Johns on the west, containing 300 acres of land, more or less," to Zephaniah C. Gibbs and George Kingsley, upon trust, expressed as follows: "To hold the same for the sole and separate use of my freed mulatto woman, Flora H. Kingsley, during her natural life, who is, from the date of these presents, to be entrusted with the free and unrestrained possession and use of all the emoluments of the said property, and to continue in her possession and for her free and sole use, benefit and behoof during her natural life, and immediately after her decease to have and hold said property for the use of her son Charles—a quarteroon child of six months old—and to his heirs and assigns forever, and in case of the death of her aforesaid son Charles, without leaving issue, then to have and hold the said property to any other quarteroon child or children that she may have, share and share alike, if more than one; and if only one, then the whole to that one, its or their heirs or assigns forever. But in case the said Flora should die without leaving issue of the aforesaid description, then my trustees, aforesaid, are to hold this property to and for the use of her heirs and assigns forever."

This deed was duly acknowledged and recorded.

Deed No. 2, offered in evidence by plaintiffs: under date of 20th of July, 1831, Zephaniah C. Gibbs and George Kingsley made their deed of the same lands to Zephaniah Kings-

ley " in consideration of five dollars, and of a conveyance of the same lands, immediately to be made, by Zephaniah Kingsley to the said Flora, for her natural life, to the intent that the life estate created " by the former deed " may be extinguished."

It concludes, and there are entries on the record after the signatures of the grantors, as follows :

" In witness whereof the said Zephaniah C. Gibbs and George Kingsley have hereunto set their hands and seals on the day and year first above written.

" Z. C. GIBBS. [SEAL.]<br>"GEORGE KINGSLEY. [SEAL.]

" I, Flora Kingsley, do hereby give my free consent and approbation of the foregoing deed of surrender.

"FLORA KINGSLEY. [SEAL.]<br>"Z. KINGSLEY. [SEAL.]

" Signed, sealed and delivered in presence of us at Fort George Island, the day and year first above written.

" B. S. SANCHEZ,<br>" JOHN MABE.

" TERRITORY OF FLORIDA, }<br>" County of Duval. }

" *Be it remembered*, That on this twenty-second day of July, A. D. 1831, came before me the subscriber, Clerk of the Circuit Court for the county of Duval, John Mabe, and made oath that he saw the parties to the above instrument of writing, sign, seal and deliver the same for the purpose therein mentioned, wherefore I have recorded the same.

" Witness my name as Clerk aforesaid, the date aforesaid. " ISAIAH D. HART."

The referee held this deed inoperative.

Deed No. 3, offered by plaintiffs: under date of 21st July, 1831, Zephaniah Kingsley made his deed of the same premises to "Flora H. Kingsley, for and during her natural life;

remainder in fee simple, absolute to Charles and James Kingsley, natural children of the aforesaid Flora, and such other natural or legitimate children or child, which may be born of her body during her life, and of quarteroon breed; or such children as the aforesaid Flora shall acknowledge to have been produced by sexual intercourse with a white man, to them and their heirs and assigns forever."

The deed concludes, and has entries on the record, as follows:

" In witness whereof the said Zephaniah Kingsley hath hereunto set his hand and seal the day and year first above written.

" Done at Fort George Is.

" Z. KINGSLEY. [SEAL.]

" Witness—

" B. S. SANCHEZ,
" K. C. GIBBS,
" JOHN MABE.

" I, Flora H. Kingsley, do hereby give my free consent and approbation to the foregoing premises, on the day and year first above written.

" FLORA H. KINGSLEY. [SEAL.]

" Witness—

" B. S. SANCHEZ,
" K. C. GIBBS,
" JOHN MABE."

This deed was duly proved and recorded.

The referee held this deed inoperative.

Deed No. 4, offered by defendants: under date of 14th of September, 1855, Flora Kingsley made her power of attorney to George C. Gibbs, authorizing him to sell and convey her real estate in Florida.

This deed was duly executed, proved and recorded.

Deed No. 5, offered by defendants: under date of 30th November, 1855, Flora H. Kingsley, by George C. Gibbs,

her attorney, made her deed to Charles Cutter, conveying to him "all that tract of land in Duval county, Florida, embracing two grants of land, severally described and bounded as follows: One grant to Robert Whitmore, containing 300 acres, bounded on the south by Goodby's lake, on the north and west by the St. Johns river and lands surveyed in the name of William Hollingsworth, and on the east by public lands; section number twenty, supposed to have been entered by Thomas Ledwith. The other grant, containing 140 acres, to William Hollingsworth, and bounded on the north by land surveyed to John M. Hanson, on the west by the St. Johns river, on the south and east by the aforesaid grant to Robert Whitmore. The aforesaid grant, comprising sections 45 and 46 in township 3, south of range 27, east, and being the same tract of land known as the Camp New Hope tract, and containing in all 440 acres, more or less."

This deed was duly acknowledged and recorded.

Deed No. 6, offered by defendants: on the 30th July, 1857, Charles Cutter conveyed to John Broward, Jr., (one of the defendants) the land described in the last mentioned deed.

The deed was duly acknowledged and recorded.

Testimony on the part of the plaintiffs:

John S. Sammis sworn: Knew Zephaniah Kingsley and Flora Kingsley. They lived together and cohabited as man and wife in Duval county, Florida, prior to her removal to the Island of San Domingo, in the West Indies. Have known plaintiffs from their childhood. They were acknowledged by Zephaniah Kingsley to be his children, and were notoriously known and recognized as his children in the neighborhood; their mother was Flora H. Kingsley. She and the plaintiffs removed from Duval county, Florida, to San Domingo, in the year 1842. Zephaniah Kings-

ley died in 1848. " " Flora Kingsley, the wife of Zephaniah Kingsley, survived him. He left a will." [A copy of the will was offered by plaintiffs and filed in evidence.]

*Cross-examined.*—Zephaniah Kingsley was never married within my knowledge. He acknowledged Flora H. Kingsley as his wife, and acknowledged another woman as his wife at the same time.

George K. Sammis sworn : Resides in San Domingo. Know the plaintiffs, and know their mother, who was Flora H. Kingsley. She died February 18th, 1875, in San Domingo.

The plaintiffs then offered in evidence a certified copy from the clerk's office of Duval county, Florida, of deed numbered three as above; (to the admission of which the defendants objected.)

A stipulation between plaintiffs and defendants was then filed, covering the following points, viz:

1st. That Zephaniah Kingsley was a white man.

2d. That the defendants are in possession of the lands sought to be recovered except 32 3-4 acres, of which a particular description is given.

3d. That the plat and notes of survey of the Robert Whitmore grant, from the Surveyor-General's office, Tallahassee, Florida, hereafter mentioned, are a true and authentic plat and survey of the said Robert Whitmore grant, made to him, or to his heirs or assigns, by the Spanish government, and confirmed by the United States Commissioners.

4th. That the Robert Whitmore grant is embraced in the deeds offered by the plaintiffs.

The plaintiffs rest.

Evidence on the part of the defendants:

The defendants offered:

1st. The plat and notes of survey of the Robert Whitmore grant mentioned in the above stipulation.

2d. Certified copy from the clerk's office of Duval county, Fla., of deed numbered one, as above.

3d. Certified copy from same office of deed numbered four, as above.

4th. Certified copy from same office of deed numbered five, as above.

5th. Certified copy from same office of deed numbered six, as above.

6th. So much of Volume 6 of American State Papers (edition of 1860, prepared by Ashbury Dickins and John W. Forney) as contains the report of the commissioners on the claim numbered 17 of the heirs of Robert Whitmore, claimants for 150 acres of land, found on page 64 of said volume.

7th. So much of said volume as contains the report of the commissioners on the claim numbered 11 of William Hollingsworth, claimant for 150 acres of land, found on page 63 of said volume.

The defendants rest.

Evidence on the part of the plaintiffs resumed :

1st. They offered a certified copy from the clerk's office from Duval county, Florida, of deed numbered two, as above. (Objected to by defendants.) Rejected by the referee.

2d. They offered a certified copy from the same office of a deed dated April 10th, 1829, from William Hollingsworth to Zephaniah Kingsley, of land described in deeds 1 to 3. (Objected to by defendants.) Not acknowledged or proved.

3d. John S. Sammis was recalled and some testimony taken, seeking to identify the land occupied by the defendants, and proving the death of Charles Kingsley in 1852.

The referee held that the deed of Gibbs and Kingsley, trustees, to Zephaniah Kingsley was inoperative, because it

was not witnessed as required by law, and because, if properly executed, the trustees had no power to convey so as to divest the infant, Charles, of the remainder vested in him by the deed of 1829. And for the same reasons the deed of Z. Kingsley to Flora for life and to Charles and James in remainder, dated in 1831, was inoperative. These rulings are the basis of the first and second assignments of error.

The referee also held that the deed dated June 26, 1829, of Z. Kingsley to the trustees for the use of Flora for life, and remainder to Charles and his heirs and assigns, and on his death without issue then to any other " quarteroon " children she may have, and if she have none such issue then to the use of her heirs and assigns, was inoperative to confer an estate upon her illegitimate children to be thereafter begotten, and that these plaintiffs as such children took no estate under such deed. This is assigned as the third and fourth grounds of error.

[The order by which this cause was referred to the referee bears date January 11, 1876. The judgment of the referee is dated December 22, 1882.—Rep.]

*C. P. & J. C. Cooper* for Plaintiffs in Error.

1. The identity of the property in controversy is admitted by stipulation of counsel on file.

2. What interest in said land was conveyed by Flora H. Kingsley, through her attorney in fact, George C. Gibbs, to Charles Cutter, from whom John Broward in his lifetime derived title ? Certainly nothing more than Flora H. Kingsley possessed at the time of the conveyance from her to Cutter as aforesaid.

3. What estate in said land was vested in Flora H. Kingsley ? To answer this we must look at the deeds Nos. 1, 2 and 3.

Deed No. 1, from Zephaniah Kingsley to Z. C. Gibbs and George Kingsley, trustees, conveyed said land to them in trust for Flora H. Kingsley during her natural life, with remainder in fee to her son Charles, an infant *in esse*, and in the event of the death of Charles, without issue, to any other quarteroon child or children that the said Flora H. Kingsley might have.

Even if this deed controls, and is not superseded by the subsequent deeds, Nos. 2 and 3, Flora only took a life estate, and on her death Charles, or any other quarteroon child or children surviving her, became the owners of the fee.

By deed No. 2, from said trustees to Zephaniah Kingsley of same land, which conveyance is consented to and approved in writing under seal of Flora H. Kingsley, all interests in the land were surrendered or conveyed to Zephaniah Kingsley ; except, perhaps, the remainder interest in fee, of the infant Charles, which fact becomes immaterial in the present investigation, as it is in proof that Charles died without issue before the life estate terminated.

Then we find all the right, title and interest which Z. Kingsley conveyed out of himself in and to said land, back again in him.

4. This brings us to the consideration of Deed No. 3, conveying same land by Zephaniah Kingsley " to Flora H. Kingsley during her natural life ; remainder in fee simple absolute to Charles and James Kingsley, natural children of the aforesaid Flora and such other natural or legitimate children or child which may be born of her body during her life and of quarteroon breed," &c.

This is the deed under which the plaintiffs claim James Kingsley is one of the donees named in said deed, and therefore takes directly.

The other plaintiffs are the children of Flora H. Kings-

ley, " of quarteroon breed," as proven by the testimony of John S. Sammis and George K. Sammis, and answer the description in the said deed of the remaindermen were who should take, in fee simple, on the expiration of the life estate of Flora H. Kingsley.

Flora H. Kingsley died February 18, 1875, in San Domingo. At that time the life estate terminated and the fee simple vested in the plaintiffs, being the only surviving children of Flora H. Kingsley " of quarteroon breed," *in esse* at the time of her death.

5. Let us consider the objections to plaintiffs' claim urged by defendants' counsel.

If deed No. 1 has not been suspended by the subsequent conveyance referred to, and is valid and binding, then we hold that plaintiffs are equally *rectus in curia* as if they took the fee under deed No. 3. And the objection made by defendants that the limitation " quarteroon child or children " is void for uncertainty, &c., is equally applicable to said plaintiffs, whether they take under deed No. 1 or deed No. 3. But is it a *good valid legal* objection, so as to defeat the claim of the plaintiffs, and so as to have vested the fee in Flora H. Kingsley, under and from whom defendants admit they derive title? We think not.

Plaintiffs take *as purchasers, not as heirs.* They claim under direct conveyances from Zephaniah Kingsley by the operation of said conveyances, and not by the operation of *law.* Hence all the argument based on the idea of *" pedigree," " legitimacy," " bastardy,"* &c., has no application to the case whatever. It matters not whether Flora was Z. Kingsley's wife or mistress, or whether her " quarteroon children " were her offspring by Kingsley, or with some other white man, or whether said " quarteroon children " were born in lawful wedlock or were bastards.

But was the limitation referred to too remote, and the

description "quarteroon child or children" too uncertain to vest the fee in said land in the plaintiffs? See "Fearne on Contingent Remainders," page *465. The chapter cited begins: "It has already been shown that a legal remainder must vest either during the existence of the particular estate, (*in esse* or in right of entry,) or at the very instant of its determination; otherwise it will never take effect at all."

Now the plaintiffs were *in esse* and capable of taking when the particular life estate to Flora was determined, and this is all that is necessary under that head. It was not necessary that they should have been *in esse* when the particular estate was *created, only when it determined.*

But could the *remainder* have been destroyed by the conveyance from Flora through G. C. Gibbs her attorney in fact to Charles Cutter? Certainly not, if the purchaser had notice of the existence of the remainder interest. He then bought subject to the rights of the remaindermen, or in other words could only buy, *and did only buy*, the life estate held by Flora in and to the lands in controversy. Flora having the right of the enjoyment and possession of the land during her natural life, (under both deed 1 and 3,) became a trustee for her children of quarteroon breed, so as to preserve the remainder for them. She could not alienate or destroy the remainder; and if she sold with the intention of defeating the remainder in fee, supported as it was by her particular life estate, she perpetrated a fraud by committing a breach of trust.

Fearne on Contingent Remainders, 478 and 479, says: "The legal estate, thus limited to the trustees during the life of tenant for life, is a good remainder vested in them; under which they will have such a right of entry, in case of any forfeiture or tortuous alienation by the tenant for life, as will support the contingent remainders expectant on his decease. Now, it seems if such trustees to support con-

tingent remainders, join in a conveyance to destroy the contingent uses or remainder which they were entrusted to preserve, a court of equity will consider it breach of trust. And in general, if the purchaser under such conveyance comes in for valuable consideration, and without *notice*, then will the remedy of the person claiming under the contingent remainders be against the *trustees*, who shall be decreed to purchase lands with their own money, equal in value to the lands sold by them, and to hold them upon the same trusts and limitations as they held the other. But if the conveyance *be with notice* of the uses, whether with or without consideration, in that case the *purchaser* shall hold the lands *subject to* the former trusts. * * * *Such purchaser · holds the land* subject to the same trusts as the trustees themselves did."

6. Did Broward, the purchaser from Flora, have *notice* of the tenure of her claim or interest in the land, and the fact that she held said land subject to the remainder interest in fee of her quarteroon children? All the deeds (1, 2 and 3) were duly recorded; although defendants question the record of deed 3, because, as they allege, there are no witnesses to Z. Kingsley and Z. C. Gibbs' execution of same.

It is very evident from the appearance of the paper that B. S. Sanchez and John Mabe witnessed both the execution of the deed by George Kingsley and Z. C. Gibbs, and the consent and approbation claimed by Flora Kingsley and Z. Kingsley, the whole being but one transaction; and the said trustees, grantor and grantee under said deed, for her natural life, being all parties to said transaction, and executing the indentures in succession, as their names appear, at one and the same interview, the subscribing witnesses certifying that the said paper was signed and sealed, &c., in their presence, *not stating by whom*, but clearly meaning by *all* the parties to it.

But even if deed No. 2 was never legally executed and recorded, deed No. 1 is admitted to have been both regularly executed and recorded. And under *that* we contend that the present plaintiffs are equally remaindermen as they are, under deed No. 3. . Their rights not being the least effected by the subsequent transfers, that resulted in settling the fee in the remaindermen—divested of the trust in the trustees Kingsley and Gibbs, and giving the possession and enjoyment of the property to Flora during her natural life, (without the intervention of trustees,) remainder as aforesaid. So that the proper execution and record of either of said deeds would be sufficient for our purposes, and *record is notice.* Thompson's Dig., p. 180; 1 John. Chan., Rep., 394; 1 Story's Eq. Jur., §§403, 850; 22 Howard's, 325.

7. Was the description of the unborn children so vague and uncertain that they could not take under either of the deeds referred to, as remaindermen? We see that Charles and James were *in being* at the time deed No. 3 was made, and are named as remaindermen in said deed. Charles died before the life estate determined; James still lives and is one of the plaintiffs to this suit. His estate in said land then was not a *contingent* remainder, but a *vested* remainder to take effect on the determining of the life estate. Lott vs. Meacham, Executor, 4 Fla., 148; Howe's Ex. vs. Gartman, 1 Fla., 85.

So vested is the interest of remaindermen that they may file their bill *quia timet* if the property is in danger of being squandered, diverted or wasted by the tenant for life, or the interest during the life time of the *cestui que vie* or *que autre vie.* See Sanderson vs. Jones, 6 Fla., 340.

All of these Florida cases cited involve remainder interest in *personal* property. How much more so in cases like *this,* involving remainder interests in realty? The only diffi-

culty in the consideration of these cases cited seemed to have been to have assimilated remainder interests in *personalty* to similar interests in realty. The principles set forth having been admitted and treated as axiomatic when applied to remainder interest in realty.

So much for *James*. If by any possibility the other complainants are not " *rectus in curia*," there is no doubt *James* is entitled to recover the entire fee in said land, *Charles being dead*.

8. But are the other complainants (that is the "quarteroon" children of Flora not in being at the time of the making of deed No. 3, but in being at the time of the determination of the life estate,) not " *rectus in curia* " as complainants?

The defendants say they are not ; " that the limitation to them is void :"

1st. For uncertainty in the description of the persons, " quarteroon children " not being a sufficiently definite and certain description.

2d. " It is void also as being a limitation to *bastards* not in being."

We will take up the objections in their order. We admit that the remainders to said quarteroon children were contingent, as they were not in being at the time of the creation of the life estate, and therefore the limitation was conditional, and depended on an event that was *uncertain* at the time referred to. Yet if the contingency ever happened before the expiration of the life estate the remainder in fee was *good*. And because vested as soon as the remaindermen were *in esse*. Fearne, page 4, divides contingent remainders into four classes. The fourth class is : " When the person to whom the remainder is limited is not yet ascertained, or not yet in being." On page 5 he gives as illustrations of this class two cases—first, " as if a lease

be made to one for life remainder to the *right heirs* of F. S., and second, " where a remainder is limited to the first son of B., who has no son then born." Now the " *quarteroon children* " of *Flora* is not more uncertain than the " right heirs of F. S.," or, " the first son of B." If the persons intended can be ascertained by the description then the limitation is not void for uncertainty. The term " *quarteroon* " is one susceptible of application. Its meaning is fixed and well understood, and requires no explanation. It is used as " *descriptio personæ*," and it is to the heirs *special* of Flora. And the designation " quarteroon children " is to distinguish them from her heirs *general*. As analagous and applicable to the case at bar is the illustration found on the 30th page of Fearne. These will be found to be much more numerous, as they depend on one hand on a general rule of law respecting limitations to the heirs general or special, where the ancestor takes an estate of freehold in the same conveyance ; and on the other, upon the *respect which is paid* to the intent of a testator, where it can be plainly collected from his will, that he used the words heirs of the body, &c., as a " *descriptio personæ*."

Now the only difference in facts between the case cited and the case at bar are : The case in Fearne is one where the conveyance is by *will ;* and the remaindermen are described as the " *heirs of the body* " of the ancestor or person who took the particular estate " in the same conveyance."

The case at bar. is a conveyance by deed, and the remaindermen are described as " *quarteroon children* " of the person who took the particular estate " in the same conveyance." " Heirs of the body " in the first were decided to have been used as " *descriptio personæ.*" In the other we hold that " *quarteroon children* " is used also as " *descriptio personæ.*" In the first it was ruled that " respect should be paid to the intent of a *testator* where it can be plainly collected from

his *will*." In the other we say *that respect should be paid to the intent of the donor or grantor where it can be* plainly collected *from his deed*.

The second objection to the limitation, as urged by the defendants, to-wit: it being a limitation to bastards not in being, we meet by saying, as we have already said, that the remaindermen need not be in being at the time of the creation of the life estate. So that they (the remaindermen described) are *in esse* at the time of the determination of the particular estate. This we have already shown by our citations from "Fearne on Contingent Remainders." Defendants insist that said quarteroon children are *bastards*, and insist further that to be effectual (that is the remainder in fee to them) the *legitimacy* of such quarteroon child or children must be proved. We reply that said "quarteroon children" take by *purchase and not by descent*. Hence, as we have said before, their legitimacy or illegitimacy has nothing to do with their being remaindermen. They take the fee in remainder to said lands, not as the *heirs* of Z. Kingsley, but as the *grantees* of Z. Kingsley. They do not take by operation of *law*, but by the act of the grantor. Even supposing that they were *bastards*, there is nothing in the laws of Florida prohibiting bastards from purchasing property or from receiving property by gift or devise.

Legitimacy and bastardy are not involved in this suit, and cannot be considered. Nothing is involved except were these persons in being at the time of the determination of the life estate answering the description of "quarteroon child or children of Flora H. Kingsley," (not whether they were born in lawful wedlock or not.) If so, then they took the fee in said land, the particular estate having ended. "*Only this, and nothing more*." If legitimacy or pedigree had anything to do with the power and right of a pur-

chaser or donee to take under a deed, the question of legiti-
macy and pedigree might become *the* important one in
every transfer or conveyance of property, which would be
absurd.

*E. M. L'Engle* for Defendants in Error.

The defendants in error rely :
First. On the possession of the land, except the 32 3-4
acres, and on their chain of title commencing with deed
number one, and continued through deeds numbers four,
five and six.

Second. On the fact that by the report of the commis-
sioners confirming the concession to Robert Whitmore, and
by the plat and survey of said grant, a paramount title out
of the plaintiffs has been shown, which they have not suc-
ceeded in overcoming.

Third. On that principle of law which requires the plain-
tiffs to recover on the strength of their own title, not on
the weakness (if there be any) of their adversaries' title.

The plaintiffs' case will be considered from the stand-
points of :
First. Relying on deed number one.
Second. Relying on the title, which they offered in evi-
dence, commencing with deed number three.

First. By deed numbered one the estate devolved first on
Flora Kingsley for her life, remainder to her infant son
Charles. A contingent limitation was attempted to be
created in favor of " any other quarteroon child or chil-
dren " of Flora, to take effect after the death of Charles
without issue. But that limitation is void for uncertainty
in the description of the persons ; " quarteroon children "
not being a sufficiently definite and certain description.
It is void also as being a limitation to bastards not in be-
ing. To be effectual the legitimacy of such " quarteroon

child or children " must be proved. In the absence of such proof the estate would be held to vest absolutely in Flora on the death, before her, of Charles without issue. 1 Fearne on Remainders, 255, citing Mildmay's Case, 6 Rep.; Ib., 249, citing Edwards vs. Blodwell, 1 Cro.; Metham vs. Duke of Devonshire, 1 Pere Williams' Rep., 529; Cartwright vs. Vawdry, 5; Sumner's Vesey Jr. R., 534, b; Earle vs. Wilson, 17 Sumner's Vesey Jr. R., 528; Perry on Trusts, (Ed. 1872) p. 38, and cases cited in n. 3; Ib., pp. 12, 54, 59.

No attempt has been made to prove the legitimacy of the plaintiffs, but the contrary appears by the testimony of John S. Sammis and by the will of Zephaniah Kingsley. The eleventh clause of that will is as follows:

" Eleventh. I do hereby appoint. Kingsley B. Gibbs, George Kingsley and Benjamin A. Putnam as guardians to my natural children, amongst which I acknowledge all those of Flora H. Kingsley, of Camp New Hope; also Sarah Murphy's mulatto child, Micanopy, now in Hayti. I do also solemnly enjoin my colored and natural children that, seeing the illiberal and inequitable laws of this Territory will not afford to them and to their children that protection and justice which is due in civilized society to every human being, always to keep by them a will ready made and legally executed, directing the disposition of their property after their death until they can remove themselves and property to some land of liberty and equal rights, where the conditions of society are governed by some law less absurd than that of color. This I strongly recommend. Nor do I know in what light the law may consider my acknowledged wife Anna Madgigine Jai, as our connubial relation took place in a foreign land, where our marriage was celebrated and solemnized by her native African custom, although never celebrated according to the forms of
48

christian usage. Yet she has always been respected as my
wife, and as such I acknowledged her. Nor do I think
that her truth, honor, integrity, moral conduct or good
sense will lose in comparison with any one."

Second. The plaintiffs offered deed No. 3 as the com-
mencement of their title. But deed No. 1, and the conces-
sion from the Spanish Government having been put in evi-
dence by the defendants, it became necessary for the plain-
tiffs to connect the concession and deed No. 1 with deed
No. 3.

They attempted to overcome the concession by offering
in evidence a certified copy of a deed from William Hol-
lingsworth to Zephaniah Kingsley, of the land described
in deed No. 1. To the admission of this document the de-
fendants objected, because it does not appear that its exe-
cution was ever acknowledged or proved in the manner
provided by the statutes, and that, consequently, the clerk
was not authorized to record it. If not entitled to record
a certified copy from the record is not admissible as evi-
dence under our statute. Thompson's Digest, 180; San-
ders vs. Pepoon, 4 Fla., 465.

They attempted to overcome deed No. 1 by offering in
evidence a certified copy of deed No. 2. To the admission
of this document the defendants objected, because,

1st. There are no subscribing witnesses to the execu-
tion of the deed by Z. C. Gibbs and George Kingsley.

2d. The execution of the deed was never acknowledged
or proved in the manner prescribed by the statute.

That, consequently, the clerk was not authorized to re-
cord it, and a certified copy from the record, so improperly
made, is not admissible as evidence under our statute.
(Same authorities.)

3d. It appears affirmatively by deed No. 1 that the gran-
tors had no estate which they could convey, they being

trustees merely to hold the legal title for prescribed uses, (one of the *cestuis que trust* being an infant,) and without power of sale. Perry on Trusts 74, and cases cited in notes.

Deed No. 3 is inoperative also, because it appears affirmatively that Zephaniah Kingsley, the grantor, had no estate which he could convey, having parted with whatever he had by deed No. 1, and never having re-acquired it.

In so far as two of the plaintiffs, William and Osceola, are concerned, they can claim no right under this deed, because they are not mentioned in it by their names, and they cannot take under the limitation attempted to be made to bastards not *in esse.* It is in proof that all of the plaintiffs are bastards, and there is no evidence that any but James was in being at the time of the making of deed No. 3.

The testimony of Sammis, showing the paternity of the plaintiffs, is inadmissible, and the motion to strike it out was well made after it had been developed on the cross-examination that the parents were never married. The fact of the marriage of the parents is the basis of all hearsay testimony to show paternity in establishing pedigree.

This testimony of the witness is, however, altogether immaterial to the case.

The identity of the land described in the pleadings, with that described in the copies of the deeds, is not established. But the defendants *do not make the objection. They will concede* for the purposes of this action that the lands mentioned in the pleadings and in all of the *documentary evidence are the same.*

I will refer again to the arguments of uncertainty in the description of the persons and of illegitimacy, as plaintiffs' counsel seems not to have understood them.

In addition to the term " quarteroon child or children " being insufficient in itself, we say that if Flora Kingsley had been married to Z. Kingsley and that fact had been es-

tablished, Sammis' testimony as to plaintiffs' paternity would have been admissible, and by such testimony the plaintiffs might have been shown to be " quarteroons." But in the absence of such proof of marriage the plaintiffs' paternity cannot be so proved. They are *nullius filii*, and there is no competent testimony to show that they are " quarteroons." That is, popularly speaking, offsprings having three-fourths white and one-fourth negro blood. [In this respect we differ from the finding of the referee.]

We do not contend that the plaintiffs claim by descent from Flora. If they did they might have no difficulty in sustaining their claim. We admit and assert that they claim and can claim only by purchase; and we submit that under the law one of two facts must be shown to give plaintiffs a standing in court, viz: Either that, being illegitimate children, they were in being when the deed was made; or that, not being *in esse* when the deed was made, they are legitimate children of Flora Kingsley, because a limitation to bastards not in being is void.

THE CHIEF-JUSTICE delivered the opinion of the court:

It is established by the evidence that Z. Kingsley was not married to Flora H. Kingsley, and that she was never married; that at the date of the deed to the trustees, (1829) Charles, her only child then living, was about six months old; that Flora lived with Z. Kingsley and these plaintiffs were born during such cohabition, he being their putative father; that he was a white man and Flora a person of African or negro blood, the result of all which is that the plaintiffs are the illegitimate children of Flora. Charles died in 1852 and Flora in 1875 in San Domingo, where plaintiffs reside.

The deed of June 1829 to the trustees gave to Flora an estate for life and remainder to Charles.

A remainder is defined by Lord Coke to be a remnant of an estate in lands or tenements, expectant on a particular estate, created together with the same at one time. This imports that the remainder must commence or pass out of the grantor at the time of the creation of the particular estate. Thus, where an estate is conveyed to A for life, remainder to B in fee; B's remainder in fee passes from the grantor at the same time as A's life estate in possession. (Fearne on Remainders, 3 and note.) A vested remainder exists "when there is a person in being who would have an immediate right to the possession of lands upon the ceasing of the intermediate or precedent estate." (4 Kent's Comm., 202.) By the terms of this deed the termination of the life estate of Flora would give the right of possession to Charles. His estate was therefore from the moment of its creation a vested remainder. "It is the present capacity to take effect in possession, if the precedent estate should determine, which distinguishes a vested from a contingent remainder. Where an estate is granted to one for life, and to such of his children as should be living after his death, a present right to the future possession vests in such as are living, subject to open and let in after born children, and to be divested as to those who shall die without issue. A vested remainder is an estate recognized by law, and is grantable by any of the conveyances operating by force of the statute of uses." Croxall vs. Shererd, 5 Wal., 268, 288; Jackson vs. Sublett, 10 B. Monroe, 467; 4 Kent, 202; Fearne, 216, 217.

The remainder being then vested in Charles from the moment the estate was created by the deed of 1829, no act of the trustees could affect his right. He had a present estate with a fixed right of future possession which vested estate was, in law, alienable by him on arriving at maturity, though the life estate had not then terminated. The

deed which the trustees attempted to make, however, was not executed in due form of law, not being attested by witnesses, and no further consideration need be given to it. Of course it follows that the deed of Z. Kingsley of 21st July, 1831, conveyed no estate as none remained in him nor had been conveyed to him by the trustees.

But it is claimed by plaintiffs in error that the deed of 1829 created a contingent remainder in the plaintiffs, to-wit: that in the event that Charles should die without issue " then to have and to hold the said property to any other quarteroon child or children that she may have," &c.

A contingent remainder may fail of effect, and the law will never adjudge a grant good by reason of a possibility or expectation of a thing which is against law, and upon this principle it was decided at a very early day, and is a settled rule of the common law, that " a limitation to a bastard not *in esse* is held to be void ; for the law does not favor such generation, or expect that such should be." Fearne, 248, 249.

The late Earl of Devonshire devised three thousand pounds to all the natural children of his son by Mrs. Heneage, and the question was whether the natural children born after the will should take a share, and it was decided by the Lord Chancellor that they could not. Metham vs. Duke of Devon., 1 Peere Wms., 529 ; and see Cartwright vs. Vawdry, 5 Ves., 530 ; Wilkinson vs. Wilkinson, 1 Younge & Coll., 657.

Sir William Grant, M. R., in Earle vs. Wilson, 17 Ves., 531, stated the rule as laid down by Lord Coke, and adopted by Lord Macclesfield, to be that " a bastard cannot take as the issue of a particular person, until it has acquired the reputation of being the child of that person ; which cannot be before its birth." Evans vs. Massy, 8 Price, 34 ; Snelham vs. Bailey, 1 Sim. & Stu., 78, note ; Wilkinson vs. Adam, 1 Ves. & Beame, 422.

A trust for illegitimate children to be thereafter begotten will not be enforced, as being against good morals.   1 Perry on Trusts, §66, and authorities cited.

It must, therefore, be held, upon authority, that the limitation in this deed to the "quarteroon children" of Flora Kingsley not then *in esse*, and these plaintiffs being such children and illegitimate, was void.   No right under the trust deed vested in them because they were not then begotten, and were not and could not be identified and named, and they were not legitimate.

Flora had no legitimate children upon whom the estate could be transmitted.

The limitation in the deed was to Charles and to his heirs and assigns forever; and in case of his death without issue to any other quarteroon children that she may have, and to their heirs and assigns forever; but in case the said Flora should die without leaving issue of the aforesaid description then the trustees are to hold the property to and for the use of her heirs and assigns forever.

We have found that the plaintiffs took nothing under this deed.   On the death of Charles what became of the estate?   Not to the plaintiffs, because the law declares they cannot take under the deed.   We have a statute providing that "bastards shall be capable of inheriting or transmitting inheritance, on the part of their mother, in like manner as if they had been lawfully begotten of such mother."   Act of November 17, 1829, McClellan's Dig., 470, §8.

The testimony is that Charles died in 1852, but we find no proof that he died *without issue*.   If he had issue living at his death recognized by law, the estate in fee vested in him and his heirs and assigns.   If he had no such issue, and he had an estate of inheritance under the deed, the property escheated to the State, or was transmitted to his mother by force of the above mentioned statute.

In the following cases it was held, under this precise statute, that the property would go to his lawful children, but would not go to his mother if he had no such children, nor to his illegitimate brothers: Bent's Heirs vs. St. Vrain, 30 Mo., 268 ; Doe *ex dem.* Crawle vs. Bates, 6 Blackf., 533 ; Scroggin vs. Allan, 2 Dana, 363 ; Remington vs. Lewis, 8 B. Monroe, 606 ; Stevenson's Heirs vs. Sullivant, 5 Wheaton, 207 ; and this whether the property came to him through the mother or by purchase.

In the case of Stover vs. Boswell's Heirs, 3 Dana, 233, it was decided (conflicting with the above cases in 2 Dana and 8 B. Mon.) that under this statute the mother might " inherit from and transmit an inheritance to her bastard children." In Ohio, Little vs. Lake, 8 Ohio R., 290, the court says that if the illegitimate son had died before his mother she would have inherited the estate from him; but the law has not removed all the disabilities of bastards. It has permitted an inheritance from or to the mother ; but it has not permitted it from or to collaterals merely because they are connected with the mother. In Virginia, Garland vs. Harrison, 8 Leigh, 358, and Hepburn vs. Dundas, 13 Grat., 219, it is decided that under this statute bastards might transmit inheritance to bastard brothers and sisters, the mother being dead. The court in this case refuses to be governed by the ruling of the court in Stevenson's Heirs vs. Sullivant upon the same statute upon the ground that the court in the latter case had construed the Ohio law and not the Virginia statute.

If we adopt the view of the last named cases, the result will be that Flora, on the death of her son Charles without issue, was his heir and invested with whatever interest he had in the property. But if he died without issue the words of the deed make his estate a remainder for his life only.

Looking again at the language of the deed we find that it provides that if Charles dies without issue and "Flora should die without issue of the aforesaid description, (quarteroon children) then my trustees aforesaid are to hold this property to and for the use of her heirs and assigns forever." The law construes such "issue" to be legitimate and not illegitimate children.

The logical result of this is that Flora dying *without issue capable of taking under this deed* the property is held by the trustees "for the use of her heirs *and assigns* forever;" in other words, the fee is ultimately vested in her grantee. She conveyed, after Charles' death, to Cutter, who conveyed to John Broward, the original defendant in this suit. The deed gave her a power of appointment which she has executed.

In any aspect upon the facts disclosed, and the law applicable thereto, the plaintiffs have shown no title as against the defendants in this suit.

It must not be understood that in thus disposing of this case we decide the question whether, under the circumstances and the law, the title in fee vested in Charles, or that he had any estate transmissible by inheritance; nor whether, his mother surviving him, if he died without issue, she would inherit from him; nor whether if she had died without conveying the land the plaintiffs here would not have taken title as her heirs. We have cited conflicting authorities upon some points for the purpose of illustration, and to show that whichever of them be adopted the plaintiffs are in no better position.

The judgment is affirmed.