BENT'S ADMINISTRATOR, Appellant, v. ST. VRAIN, Respondent.

1. At common law a bastard had no inheritable blood ; he could transmit an estate by inheritance only to the heirs of his body ; if he died without issue and intestate leaving real estate, it escheated to the state.
2. The common law disabilities attaching to bastards with respect to their power of inheriting or transmitting by descent still attach to them in this state except so far as they have been removed by the provision that "Bastards shall be capable of inheriting and transmitting inheritance on the part of their mother in like manner as if they had been lawfully begotten of such mother." (R. C. 1845, p. 422.)
3. This provision does not render a bastard capable of transmitting an estate by descent to his mother or to his illegitimate brothers.
4. One A. died in 1848 in New Mexico, leaving two illegitimate children, B. and C., the children of the same mother. He devised certain real estate in Missouri to said children. B. died leaving said C. and the mother surviving. Letters of administration were taken out upon the estate of A., and on final settlement a sum of money arising from the accruing rents of said real estate remained in the hands of the administrator. *Held*, that B. could transmit his portion of the estate by descent neither to his mother nor to C., his brother ; that B.'s estate escheated to the state.

*Appeal from St. Louis Circuit Court.*

George Bent, of Taos, in New Mexico, died in the year 1848, leaving two illegitimate children, Robert and William Bent. These were his children by one Maria Cruz Padilla, who was at the time of their birth the wife of Jesus Maria Gallegos. George Bent devised certain real estate in St. Louis county, Missouri, to said Robert and William Bent. William Bent died after his father. Previous to the birth of said illegitimate children said Maria Cruz Padilla and her husband Jesus Maria Gallegos had a legitimate child, Mar-

cellina Gallegos. Letters of administration were taken out in St. Louis county on the estate of said George Bent, and on final settlement in the year 1856 there remained in the hands of the administrator a sum of money arising from the rents of the real estate so devised as stated above. One Ceran St. Vrain—who had previously procured deeds from said Jesus Maria Gallegos and his wife Maria Cruz Padilla and said Marcellina Gallegos, conveying to him all their interest in the estate of said William Bent, and particularly in the real estate above mentioned—moved the probate court to make an order of distribution ordering the administrator to pay to him, St. Vrain, one half of the amount of proceeds or rents of said real estate collected by and remaining in the hands of said administrator. The probate court refused so to order, but directed the said half of the amount in the hands of the administrator to be distributed equally among said Maria Cruz Padilla, Jesus Maria Gallegos, and Marcellina Gallegos. St. Vrain appealed to the circuit court. The circuit court adjudged that St. Vrain, as the assignee of said Maria Cruz Padilla, was entitled to the one-half of the balance in the hands of the administrator, and that Robert Bent and Marcellina Gallegos were neither of them entitled to any part thereof. From this judgment the administrator appealed to the supreme court.

*Jones & Sherman,* for appellant.

I. Robert Bent, though not born in lawful wedlock, is a brother of full blood of William Bent, deceased, and is therefore entitled to a brother's share of William's estate. (R. C. 1845, p. ——, § 1.) Brothers are children born of the same stock or parents. Children are none the less brothers and sisters because not born in lawful marriage. They are of the same blood. The word "brothers," as used in the statute, has no reference to legitimacy. The reason for the common law rule does not exist here. Brothers may inherit from brothers though both are illegitimate. The word brother is used in its general sense.

18—VOL. XXX.

*Dick*, for respondent.

I. On the death of William Bent, his share went to his mother. She was the sole heir. (5 Whea. 407, 260; 8 Ohio, 289; 6 Blackf. 533; 7 How., Miss., 107; 4 Dess. 444; 4 Dev. 110; 3 Dana, 234; 11 Metc. 294; 8 B. Monr. 606.) The statute legitimates the child only so far as the mother is concerned, and does not create the relation of brothers between children of the same mother. (5 Wheat. 636; 7 How. 112. See 9 Humph. 460; 4 N. J. 431; 4 Ired. 480; 7 Yerg. 615.)

SCOTT, Judge, delivered the opinion of the court.

George Bent was the father of two illegitimate children, Robert and William Bent, born of Maria Cruz Padilla, the wife of Jesus Maria Gallegos. At the time of the birth of Robert and William Bent, Gallegos and his wife cohabited together, and had a legitimate daughter named Marcellina Gallegos. The parties resided in New Mexico. George Bent, being the owner of a piece of land in St. Louis, devised it to his two bastard sons Robert and William Bent. The illegitimacy of Robert and William Bent was admitted. William Bent died after his father, George Bent. After the death of William Bent, his mother, her husband and legitimate daughter conveyed all their interest in his estate to Ceran St. Vrain. Under this state of facts, the court below held that St. Vrain, as the assignee of his mother, was entitled to the whole of William Bent's interest under the will of his father, and that neither Marcellina Gallegos, the legitimate daughter of his mother, nor his brother Robert Bent, could inherit any portion of it.

Kent thus states the common law as to the right of a bastard to inherit: "A bastard, being in the eye of the law *nullius filius*, has no inheritable blood, and is incapable of inheriting as heir, either to his putative father or his mother, or to any one else; nor can he have heirs but of his own body." (2 Kent, 212.) In the case of Cooley v. Dewey, 4

Pick. 93, it was held that at common law the mother of a bastard does not inherit his estate. In the case of Doe v. Bates and wife, 8 Black. 533, it was said that, according to the common law, if a bastard die intestate and without issue, leaving real estate, the estate escheats.

Now is there any thing in our statute law which will prevent William Bent's estate from becoming an escheat? The eighth section of our act concerning descents and distributions provides that "bastards shall be capable of inheriting and transmitting inheritance on the part of their mother, in like manner as if they had been lawfully begotten of such mother."

The common law making bastards incapable of inheriting or of transmitting inheritance except to their descendants, they are still liable to all those disabilities, except so far as they are removed by the provision above cited. The section of law conferring on bastards the capacity to inherit on the part of the mother is a copy of the act of Virginia, Kentucky and Ohio in relation to the same subject. The statute of Virginia underwent discussion, and was interpreted by the Supreme Court of the United States in the case of Stephenson's heirs v. Sullivan, 5 Wheat. 260. In that case it was held, (Judge Washington, who was familiar with the laws of Virginia, delivering the opinion of the court,) that the meaning of the words "inheriting and transmitting inheritance on the part of the mother, in like manner as if they had been lawfully begotten of the mother," was, that bastards should have a capacity to take real property by descent immediately or through their mother in the ascending line, and transmit the same to their line as descendants, in like manner as if they were legitimate; that this was the uniform meaning of the expression "on the part of the mother or father" when used in reference to the course of descent of real property in the paternal or materal line.

The case of Little and others v. Lake, 8 Ohio, 290, sanctions the constructions given to the Virginia statute by the Supreme Court of the United States and adopts it, although

it was held that another provision of the statute gave the mother a right to inherit from her bastard child. The court said, " the words ' *ex parte materna*' have an established legal meaning importing only lineal descendants, and is opposed to the words ' *ex linea materna,*' which denote a capacity of both lineal and collateral inheritance. The law does not declare that natural children shall be considered as lawfully born of their mother for all the purposes of inheritance." The case of Remington v. Lewis, 8 B. Monr. 606, contains both a legislative and judicial exposition of the statute of Kentucky in relation to bastards, which we have said is a transcript of the statute of this state. That case recognizes the construction put upon the Virginia statute by the Supreme Court of the United States, and maintains that a mother can not inherit from her bastard child.

. It is obvious that under the first section of the act concerning descents and distributions the mother can not inherit from her bastard child. That section only contemplates legitimate relations, and the bastard not being capable of inheriting, or of transmitting an inheritance but to his children, he had no capacity but what is expressly given him by statute.

From the best examination we have been enabled to give this question, we have come to the conclusion that the estate of William Bent has escheated to the state.

Judge Ewing concurring, the judgment is reversed. Judge Napton absent.