MOORE, Appellant, v. MOORE et al.

Division One, June 28, 1902.

**Descents and Distributions:** BASTARD SON OF MOTHER: HEIR OF HER BROTHER. The bastard son of a deceased sister of the intestate is entitled, under the Missouri statute (sec. 2916, R. S. 1899) to inherit from such intestate just as "if he had been lawfully begotten of her." Her death before descent cast will not prevent her bastard child from inheriting her share of the estate of her brother who dies intestate, and without lineal descendants, after her own death.

Appeal from Dade Circuit Court.—*Hon. H. C. Timmonds,* Judge.

REVERSED AND REMANDED.

*L. W. Shafer* and *William B. Skinner* for appellant.

(1) The effect of the statute, "Bastards shall be capable of inheriting and transmitting inheritance on the part of their mother, and such mother shall inherit from her bastard child or children in like manner as if they had been lawfully begotten of her," enacted in this and other States, is to give to the bastard, in law, as in fact, a mother, which he did not have at common law; to concede to him inheritable blood on his mother's side, thus placing him, in all respects, upon the same footing as her lawfully begotten child, and, as such, not only capable of receiving inheritance directly from her and of transmitting inheritance to her, but, also, through her, as the common ancestor, from or to any of her blood, in like manner (to use the language of the statute) "as if he had been lawfully begotten of her." Davis v. Rowe, 6 Rand. (Va.) 364; Stones v. Keeling, 5 Call (Va.) 143; Garland v. Harrison, 8 Leigh (Va.) 369; Bennett v. Toler, 15 Grattan

(Va.) 588; Dickinson's Appeal, 42 Conn. 491; Lewis v. Eutsler, 4 Oh. St. 354; McGuire v. Brown, 41 Iowa 650; Cooley v. Dewey (Mass.), 4 Pick. 94; Burlington v. Fosby, 6 Vt. 83; Rogers v. Weller, 5 Bliss (Ill.) 166; Jenkins v. Drone, 121 Ill. 217; Bales v. Elder, 127 Ill. 425; s. c., 21 N. E. 621; Parks v. Kimes, 100 Ind. 148; McBryde v. Patterson, 78 N. C. 412; Marshall v. Railroad, 120 Mo. 275; Greene v. Greene, 126 Mo. 23. (2) Our statute which seeks to remove the common-law incapacities of bastards by conceding to them inheritable blood on their mother's side, as well as similar statutes of sister States, "are to be liberally construed by the courts, in favor of the class sought to be relieved, without reference to the common-law rules of feudal disabilities, for the framers of these acts looked to the common-law canons of descent, to avoid, not to imitate; to pull down, not to build up; all its principles are violated, its landmarks removed; its fences broken down; its traces obliterated; their basis was the statute of distributions and the civil law, and they were founded on the great principles of justice." Davis v. Rowe, supra; Stones v. Keeling, supra; Garland v. Harrison, supra; Bennett v. Toler, supra; Dickinson's Appeal, supra; Lewis v. Eutsler, supra; Marshall v. Railroad, supra.

*Mason Talbutt* and *Edgar P. Mann* for respondents.

(1) At the common law a bastard was *nullius filius* and could not inherit from any one. Kent's Comm. (3 Ed.), 413, 414; 1 Blackstone 459; Pratt v. Atwood, 108 Mass. 40; Bent v. St. Vrain, 30 Mo. 268. (2) The principle that all statutes in derogation of the common law must be strictly construed, is elementary, and the doctrine so well recognized in this State as to require no citation of authorities. In construing the phrase "illegitimates may inherit

and transmit inheritance on the part of the mother," a strict construction of this statute, extending its provisions no further than absolutely required under the words of the act, is the rule. Jackson v. Jackson, 78 Ky. 390; Pratt v. Atwood, supra; Kent v. Barker, 2 Gray (Mass.) 535; Scroggin v. Allen, 2 Dana 363; Allen v. Ramsey, 1 Met. (Ky.) 635; Berry v. Owens, 5 Bush 452; Bent v. St. Vrain, supra; Gilbson v. Moulton, 2 Disney (Ohio) 158; Curtis v. Herrins, 11 Met. 294 (Mass.); Grubbs' App., 58 Pa. St. 55; Steckel's App., 64 Pa. St. 493; Stover v. Bosswell, 3 Dana 233; Suton v. Suton, 87 Ky. 216; Remington v. Lewis, 8 B. Mon. 606; Little v. Lake, 8 Ohio 289; Stevenson v. Sullivant, 5 Wheat. (U. S.) 260. (3) Interpretation given the language of section 2916, Revised Statutes 1899, is that the illegitimates inherit immediately from or through their mother, and that it does not connect the illegitimate through her collaterally with all who are of her blood, and that he does not take by inheritance from her collateral kindred. Bent v. St. Vrain, supra; Pratt v. Atwood, supra; Curtis v. Herrins, supra; Kent v. Barker, supra; Grubbs' App., supra; Steckel's App., supra; Remington v. Lewis, supra; Brown v. Kerby, 9 Humphrey (Tenn.) 460; Jackson v. Jackson, 78 Ky. 390; Williams v. Kimball, 35 Fla. 49; Croan v. Phelps, 14 Ky. Law 915; Stevenson v. Sullivant, supra; Hogan v. Hogan, 44 S. W. 953; Johnson v. Taliaferro, 45 L. R. A. 95.

BRACE, P. J.—This is a suit for the partition of two hundred acres of land in Dade county, described in the petition, of which the plaintiff claims that he is entitled to an undivided one-fourth, and that the defendants are entitled to the other undivided three-fourths.

The circuit court found that the plaintiff had no interest in the premises, and from the judgment against him in favor of the defendants, he appeals. On August 26, 1896, Alvin

W. Moore, his father and mother being then dead, died intestate, the owner in fee simple of the premises, without lineal descendants. The plaintiff is the only child of a deceased sister of the said Alvin W. Moore, whose death preceded his, and the defendants are his two brothers, and the children of a deceased brother, whose death also preceded that of the said Alvin W. Moore. The plaintiff's mother was never married, and the only question in the case is, does he take a share of his uncle's real estate under our statute of descents, which provides that if there be no lineal descendants and no father or mother, such estate shall descend to the "brothers and sisters, and their descendants," of the intestate (R. S. 1899, sec. 2908), and that "bastards shall be capable of inheriting and transmitting inheritance on the part of their mother (and such mother may inherit from her bastard child or children) in like manner as if they had been lawfully begotten of her" (R. S. 1899, sec. 2916) ? As originally enacted, section 2916 was a transcript of the statute of Virginia on the subject, and read as follows: "Bastards shall be capable of inheriting and transmitting inheritance on the part of their mother, in like manner as if they had been lawfully begotten of such mother" (R. S. 1825, p. 328, sec. 7), and continued on our statute books in that form until the revision of 1865, when the words in parenthesis, "and such mother may inherit from her bastard child or children," were inserted. [G. S. 1865, p. 518, sec. 9.]

The first reported case in which this statute was construed is the case of Stevenson's Heirs v. Sullivant, 5 Wheaton (18 U. S.) 207, decided in 1820, in which it was held, notwithstanding this statute, that a bastard was still, as at common law, *filius nullius* as to his collateral blood relatives on the mother's side, and could not inherit from them. The next, is the case of Scroggin v. Allan, 2 Dana (32 Ky.) 363, decided in 1834, in which the case of Stevenson's Heirs v. Sullivant was followed by a divided court, UNDERWOOD, J.,

dissenting in a masterly opinion, holding that this statute places bastards upon the same footing, in all respects as regards inheritance on the mother's side, with legitimate children. The ruling of the majority of the court, however, seems to have become the prevailing doctrine in the State of Kentucky. [Remington v. Lewis, 8 B. Monroe (47 Ky.) 606; Allen v. Ramsey's Heirs, 1 Metcalfe (58 Ky.) 635; Berry v. Owens' Heirs, 5 Bush (68 Ky.) 452; Jackson v. Jackson, 78 Ky. 390; Sutton v. Sutton, 87 Ky. 216.]

The next, is the case of Garland v. Harrison, 8 Leigh 368, decided by the Court of Appeals of Virginia in 1837, in which that court held that the bastard brothers of the decedent, as well as his mother, were entitled to take as his heirs, under this statute, and utterly repudiated the construction placed upon it by the Supreme Court of the United States in Stevenson's Heirs v. Sullivant. Three able, harmonious and exhaustive opinions were delivered in the case, all agreeing in the purpose of the statute, Judge PARKER saying in the course of his opinion that the object of the statute was "to give the bastard a mother and maternal kindred, and to make them heritable from each other in the order prescribed by the law of descents, as if the bastard had been lawfully begotten of such mother. . . . The only case which in any degree conflicts with this opinion, is the one cited, of Stevenson's Heirs v. Sullivant, 5 Wheaton 207. And even that seems to have turned upon the point, that the descent between brother and brother was immediate, and not on the part of their mother. I can not, however, bring my mind to assent to the reasoning or to the conclusions of the learned judge who delivered the opinion in that case. He seems to me to have taken too narrow and technical a view of the subject, and to have relied on the disabilities of bastards growing out of the common law, without duly considering the policy of our act of descents, which leaves little or nothing for the common law to act upon, but creates a system complete in itself. Be that

Moore v. Moore.

as it may, the case, although entitled to great respect from this court, is not binding on us as authority, and must not be permitted to control our judgments." Judge BROCKEN-BROUGH said: Under this statute "a bastard is still *nullius patris filius,* but he is not in that position as to his mother. As to her, he is as if born in lawful wedlock; in other words, he is her legitimate son, so far as his capacity to inherit and transmit inheritance. . . . The bastard is not restricted to an inheritance *from* the mother, or *through* the mother in the direct line, but he may take an inheritance, on the part of the mother, from the collateral line." And Judge TUCKER after a vigorous analysis of the statute reaches the same conclusion and says of the case of Stevenson's Heirs v. Sullivant, 5 Wheat. 207: "That case is, I think, so obviously erroneous in its total exclusion of collaterals, that I decline to follow it notwithstanding the high respect which is due to the able bench by which the decision was pronounced. It has been truly said, too, to have no binding authority upon us. On the contrary, the Supreme Court defers to the judgment of this court, in the construction which it gives to Virginia statutes." This case was followed in the subsequent cases of Hepburn v. Dundas, 13 Gratt. 219, decided in 1856, and in Bennett v. Toler, 15 Gratt. 588, decided in 1860, and is the established law on the subject in Virginia, whence this statute came to us, as it did to Kentucky and Ohio.

In the case of Little v. Lake, 8 Ohio 289, decided by the Supreme Court of that State in 1838, it was held on the authority of Stevenson's Heirs v. Sullivant, that the estate of an intestate bastard descendant without issue, who had survived his mother, did not pass to the maternal line under this statute. Although this ruling was in fact overturned by a statute of Ohio, passed in 1853, yet in the case of Lewis v. Eutsler, 4 Ohio St. 354, decided by the Supreme Court of that State in 1854, the decisions in Stevenson's Heirs v. Sullivant, and Little v. Lake, were reversed and overruled,

RANNEY, J., who delivered the opinion of the court saying in the course of the opinion:

"The narrow construction adopted in both these cases, is said to be founded upon the settled meaning of the expression, *ex parte materna,* when used in reference to the course of descent of real property in the English law. I may not fully understand what rule is intended to be here invoked. I know of none but that strict rule of feudal policy embodied in the fifth canon of descents, which confined the estate to the blood of the first purchaser. If the estate came through the paternal line to the person last seized, it should never descend to one in the maternal; and, *e converso,* if it came through the maternal line, it should never descend to one in the paternal, but should rather escheat to the lord of the fee. Very anciently, it is true, a *feudum novum* could only descend to the lineal descendants of the first acquirer. But more than a century before the passage of our statute, this harsh rule of a military system had been entirely abrogated in England; first, by granting a *feudum novum* to be held *ut feudum antiquum;* and finally, by considering every acquisition of an estate in fee simple by purchase, as a *feudum antiquum,* or feud of indefinite antiquity; thereby enabling the collateral kindred of the grantee, or descendants from any of his lineal ancestors, by whom the lands might possibly have been purchased, to succeed to the inheritance. [3 Cruise's Dig., 380.] But let it be granted (what, I think, no amount of industry could prove) that a part of the language of our statute is a tolerable translation of words which imported an exclusion of collaterals, in the English law; and still but little is done towards arriving at the intention of the plain men who passed the Act of 1831—four-fifths of whom were ignorant of the existence of any such rule, and of the language in which it is expressed. To find what they intended, it is necessary to consider all they have said, and to interpret it in accordance with the usual and or-

dinary signification of the language employed. When this is done, I find it impossible to doubt that it was intended to abrogate the common-law doctrine, so far as to declare that the bastard, instead of being *nullius filius*, should thereafter, in law as in fact, be the son of his mother; and as such, not only capable of receiving inheritance directly from her, and of transmitting inheritance directly to her, but also, through her as the common ancestor, from or to any one of her blood, 'in like manner' (to use the language of the statute) 'as if he had been born in lawful wedlock.' I find myself confirmed in the view I have expressed, by the unanimous judgment of the Supreme Court of Vermont, in Town of Burlington v. Fosby, 6 Vermont 83, upon a statute nearly identical with ours; and by the weighty opinion of Chief Justice REEVE, in his treatise on the Law of Descents, p. 96, where he says: 'By the terms, "on the part of the mother," we are to understand not only, that the mother may inherit to the illegitimate children, and the illegitimate to the mother; but that any relative on the part of the mother, may inherit to the illegitimate child, and the illegitimate child may inherit to any relative on the part of the mother.' "

This was the state of the adjudications on this statute when the case of Bent's Admr. v. St. Vrain, 30 Mo. 268, was decided by this court in 1860, in which upon the authority of the cases of Stevenson's Heirs v. Sullivant, 5 Wheat. 260, Little v. Lake, 8 Ohio 289, and Remmington v. Lewis, 8 B. Monroe 606, it was held that this statute did not render a bastard capable of transmitting an estate by descent to his mother or to his illegitimate brothers. In this decision neither the Virginia cases aforesaid, nor the later Ohio case repudiating the doctrine of the Stevenson case, are mentioned, either in the opinion or briefs of counsel. The amendment of 1865, by which in express terms the bastard was made capable of transmitting his estate by descent to his mother, was the answer returned by the Legislature to the

construction of the statute, in this case, and since the ruling upon the facts then in judgment was thus overturned by Legislative action, this statute has been before this court directly, in but one case, to-wit, Marshall v. Railroad, 120 Mo. 275, decided in 1893, in which we held that the mother had a right of action under our statute for damages for the death of her bastard son, and said, speaking of this statute, per BLACK, P. J.: "This section does not, it is true, legitimate a bastard, but it concedes to him *inheritable blood on the mother's side*. Instead of being the son of nobody, as at common law, he has a mother who is recognized as such by our laws." Incidentally this ruling was approved, and a liberal construction of this statute commended in the subsequent case of Green v. Green, 126 Mo. 17. Thus far our attention has been directed to this particular statute emanating from Virginia and engrafted alike upon the statute of descents of Kentucky, Ohio and Missouri. There is, perhaps, however, not a State in the Union in which a statute of a similar character has not been enacted to relieve a class of beings who, under the harsh maxims of the common law, were made to bear the iniquities of their parents. [24 Am. and Eng. Ency. of Law, 414; Schouler, Dom. Relations, sec. 277, 2 Kent Com. sec. 209.] This legislation, in the language of Chancellor KENT, "rests upon the principles that the relation of parent and child, which exists in this unhappy case in all its native and binding force, ought to produce the ordinary legal consequences of that consanguinity." Under any and all of these statutes, and of the rulings of the courts thereupon, the plaintiff in this case, if his mother had survived her brother, would unquestionably have inherited from or through her an undivided fourth interest in the real estate in question. But she having died first, under the ruling in the Stevenson, earlier Ohio, and the Kentucky cases, he inherits through her nothing from his mother's brother, and has no interest in the premises, although he is, in the lan-

guage of the statute, "the descendant" of the intestate's sister, and the statute declares him "capable of inheriting on the part of his mother in like manner, as if he had been lawfully begotten of her." Reasoning upon the same lines as in those cases, similar rulings have been made upon statutes substantially the same in other States. [Pratt v. Atwood, 108 Mass. 40; Curtis v. Hewins, 11 Metc. (52 Mass.) 294; Williams v. Kimball, 36 Fla. 50.]

On the other hand, under the rulings in the Virginia, the later Ohio, and Vermont cases cited, the fact of descent cast after the death of the mother, would make no difference in his right of inheritance, and he would take the same interest in his uncle's real estate as he would have taken if his mother had survived her brother. In many other States having statutes substantially the same as the Virginia statute, and none others need be considered, like rulings have been made. [Briggs v. Greene, 10 R. I. 495; McGuire v. Brown, 41 Iowa 650; Gregley v. Jackson, 38 Ark. 487; Butler v. Elyton Land Co., 84 Ala. 384.] And under the ruling of the Supreme Court of the State of Connecticut, on the general statutes of descents of that State, in which no such provision for this class of persons is made, it is held that illegitimate children may inherit to the mother or to any relative, lineal or collateral, on the mother's side. [Dickinson's Appeal, 42 Conn. 491; Heath v. White, 5 Conn. 228; Brown v. Dye, 2 Root (Conn.) 280.]

In Briggs v. Greene, supra, it is said by the Supreme Court of Rhode Island, speaking through BRAYTON, C. J.: "As the bastard had no blood which could give him kindred in any degree as ascertained by the common law or by the statute, he was equally incapable of inheriting by any of those rules. Neither was he capable of transmitting inheritance; kindred only were capable of transmitting it. This he wanted, and for want of it the current of descent was ob-

structed and stopped on reaching him, and there was none to flow from him to carry the inheritance. It could not be made to flow until the blood in his viens was made capable of giving him kindred. To remove the disability, and to enable him to inherit and transmit inheritance collaterally, which he could do lineally, to his descendants, the only kin which he had, the seventh section of the statute provides, 'bastards shall be capable of inheriting or transmitting inheritance, on the part of their mother, in like manner as if they had been lawfully begotten of such mother.' They shall inherit as the same mother's legitimate children might. The illegitimate are put upon the same footing as the legitimate for the purpose of inheritance, and for this purpose are legitimate. They have then all the same kindred as her legitimate children have, and when those born in lawful wedlock take by descent according to degrees prescribed by statute, the others take also. The kindred of both is to be traced by the same blood, the blood of the mother, which is now by the statute theirs also. A bastard still can inherit only as he has the blood of his mother. His kindred kinship can be traced only by it. He has no other blood, none of the father."

In McGuire v. Brown, supra, it was held by the Supreme Court of Iowa, that "an illegitimate child inherits from the mother, and the fact of her death before descent cast will not prevent the child from inheriting her share of the estate."

In Gregley v. Jackson, supra, it is said by the Supreme Court of Arkansas, per EAKIN, J.: "Legitimate children *of the mother* may transmit an inheritance to any and all collateral relations on the mother's side, who are of her blood, and so may her illegitimate children. This construction is too obvious to allow any serious consideration of the suggestion that the statute was meant to confine inheritances of illegitimate children to or from the mother, or through her

in the direct ascending or descending line. 'On the part of the mother'. means the mother's side of the genealogical tree."

In Butler v. Eylton Land Co., supra, in which it was held by the Supreme Court of Alabama that bastard children are capable of transmitting inheritance on the part of the mother, and when a bastard dies intestate leaving a bastard sister by the same mother, her estate will pass to that sister, SOMERVILLE, J., who delivered the opinion of the court, after reviewing the cases in closing, says: "Opposed to this view is the case of Bent's Admr. v. St. Vrain, 30 Mo. 268, decided in 1860, which follows the United States Supreme Court (Stevenson's Heirs v. Sullivant, supra) without noticing the Virginia decisions; and Remmington v. Lewis, 8 B. Monroe 606, decided in 1848, which omits to notice any of the foregoing cases. We adopt the view of the Virginia court, as being more in accordance with the principles of justice and the enlightened and liberal policy of modern legislation on this subject."

In view of what has been said, we do not think that the sanction given by this court in Bent's Admr. v. St. Vrain to the doctrine of the case of Stevenson's Heirs v. Sullivant, ought to preclude us from adopting the same rational, enlightened and humane construction of this statute given it by the highest court of the State from which it emanated, supported as it is by such an array of authority, and so obviously in accord with the letter and spirit of the statute, as indicated in the more recent case of Marshall v. Railroad, 120 Mo. 275. Hence, we conclude that under the statute, the plaintiff being the son of his mother as "if he had been lawfully begotten of her," has inheritable blood on her side which entitles him to take by descent, an undivided one-fourth interest in the real estate described in the petition, of which his mother's brother, the said Alvin W. Moore, died seized and possessed, and to partition thereof accordingly.

The judgment of the circuit court will therefore be reversed, and the cause be remanded to said court to be proceeded with in accordance with the views expressed in this opinion.

All concur.