# Foster, *et al. v.* Lee, *et al.*

## *Ejectment.*

(Decided April 20th, 1911. 55 South. 125.)

1. *Bastards; Inheritance Through Bastard.*—Construing together sections 3760 and 3761, Code 1907, it is held that a bastard is legitimated for the purpose of heirship and succession, so that the legitimate children and grandchildren of a bastard may inherit from the mother of the bastard just as he could had he survived her.

2. *Same; Statutes; In Pari Materia.*—Section 3760-61 are part of the statutes of descent and distribution, and should be construed as in pari materia.

3. *Constitutional Law; Necessity of Determining.*—This court will not determine that a statute is unconstitutional, nor pass upon that question unless it becomes necessary to do so, in the determination of the case.

APPEAL from Montgomery City Court.

Heard before Hon. WILLIAM H. THOMAS.

Ejectment by Mickie Lee, et al., against Mary Foster and others. Judgment for the plaintiffs and the defendants appeal. Affirmed.

HILL, HILL & WHITING, for appellants. That a legitimate child of a bastard cannot inherit from the bastard's mother, is expressly decided in unequivocal terms in the following cases. See *Croan v. Phelps,* 23 L. R. A. 753; *Curtis v. Hewins,* 11 Mass. 294; *Steckels Appeal,* 64 Pa. State 493; *Brown v. Kirby,* 9 Humphrey (Tenn.) 460; *Pratt v. Atwood,* 108 Mass. 40; *Berry v. Owens,* (Ky.) 5 Bush. 452; *Edwards v. Galding,* 38 Miss. 118; *Coolie v. Dewey,* (Mass.) 15 Am. Dec. 326; *Irvin v. Newin,* 63 Miss. 192; *Waggoner v. Miller,* 26 N. C. 480. It is held in principle by the following authorities, that bastards cannot inherit from kindred of their mother where the mother dies before such kindred, un-

der statutes authorizing the bastard to inherit from its mother, and in some instances even where the statutes read, on the part of the mother.—*Moore v. Moore,* 35 Vermont 98; *Bacon v. McBride,* 32 Vermont 585; *Saffold v. Haughton.* 48 Vermont 236; *Hogan v. Hogan,* (Ky.) 44 Southwestern 953; *Jackson v. Jackson,* 78 Ky. 390-39 Am. Rep. 246; *Croan v. Phelps,* (Ky.) 23 L. R. A. 753; *Bent v. St. Vrain,* 30 Mo. 268; *Little v. Lake,* 8 Ohio 289; *Miller v. Stuart,* (Maryland) 8 Gill. R. 128; *Stevenson's heirs v. Sulligent,* 5 Wheaton 250; *Gibson v. Moulton,* 2nd Disney (Ohio) 158.

GEORGE H. SHREVE, and L. A. SANDERSON, for appellee. The authorities are uniform as to the rights of the appellee to inherit from their father's mother.—*Butler v. Elyton L. Co.,* 84 Ala. 384; *Alexander v. Alexander,* 31 Ala. 38; 7 S. W. 194; 8 S. W. 337; 11 N. E. 421; 9 N. E. 684; 23 L. R. A. 753; 87 Ky. 217; 63 Cal. 414; 16 R. I. 579; 108 Ia. 594; 5 Cyc. 642.

SOMERVILLE, J.—The land sued for was the property of Nellie Marks, a former slave, who died intestate, and the plaintiffs are the legitimate children and grandchildren of Hiram Sanders, who was the illegitimate son and only child of said Nellie Marks. Plaintiffs' said father, Hiram Sanders, died prior to the death of their said grandmother, Nellie Marks, and the only question presented on the trial was whether the lineal descendants of Hiram Sanders, a bastard, can inherit from his mother as he himself could have done if he had survived her.

On the theory that they could so inherit, judgment was rendered for them against the defendant, who held as purchaser by deed from the widow (and second wife) of said Hiram Sanders, and this ruling is now assigned as error.

The propriety of the ruling complained of depends upon the meaning and effect of our statutes defining the inheritable status of bastards and regulating the descent of land. The act of 1824 (Laws 1824, p. 49) was as follows:

"Section 1. Bastards shall be capable of inheriting, or of transmitting inheritance, on the part of the mother, in like manner as if they had been lawfully begotten of such mother; and shall also be entitled to a distributive share of the personal estate of any of their kindred on the part of their mother, in like manner as if they had been lawfully begotten of such mother.

'Sec. 2. The kindred of any bastard, on the part of his mother shall be entitled to the distribution of the personal estate of such bastard, in like manner as if such bastard had been lawfully begotten of his mother."—Clay's Digest, p. 168, §§ 4, 5.

The effect of these provisions undoubtedly was to make the mother and her blood relations heirs of the bastard; and, reciprocally, the bastard the heir of the mother and her blood relations. By the Code of 1852 (sections 1578, 1579), these provisions were discarded and the present statutes (Code 1907) adopted, viz.:

"Sec. 3760. Every illegitimate child is considered as the heir of his mother, and inherits her estate in whole or in part, as the case may be, in like manner as if born in lawful wedlock.

"Section 3761. The mother, or kindred of an illegitimate child on the part of the mother, are, in default of children of such illegitimate child, or their descendants, entitled to inherit his estate."

Under these later statutes, it seems that bastards are heirs only of their mothers, and of her other bastard children, if any, and not of any kindred on the part of their mothers, as they were under the former law, al-

though all their kindred on the part of their mothers are still made the heirs of bastards. Otherwise the present statutes do not materially differ from the act of 1824.—*Butler v. Elyton Land Co.*, 84 Ala. 384, 4 South. 675. In the briefs of counsel on both sides many authorities from other states are cited and discussed. We have carefully read and considered them, and find that most of them, though pertinent in a general way, either do not deal with the precise question here presented, or are dependent upon and controlled by statutes materially variant in language and meaning from the statutes which govern us. For this reason, we deem a full review of these decisions unnecessary, and indeed useless.

The cases of *Curtis v. Hewins*, 11 Metc. (Mass.) 294, and *Steckel's Appeal*, 64 Pa. 493, and perhaps two or three others by parity of reasoning, seem to substantially support the contention of appellants; while the cases of *McGuire v. Brown*, 41 Iowa, 650, *Magee's Estate*, 63 Cal. 414, *Sutton v. Sutton*, 87 Ky. 216, 8 S. W. 337, 12 Am. St. Rep. 476, and *Moore v. Moore*, 169 Mo. 432, 69 S. W. 278, 58 L. R. A. 451, takes the opposite view, in favor of appellees. *Curtis v. Hewins* was decided under a statute substantially identical with ours, but does not discuss the question at all; merely affirming the lower court, and the effect of the decision was subseqently remedied by legislation. *Steckel's Appeal* was decided under a statute providing that illegitimate children shall take the name of their mother, and "they and their mother shall respectively have capacity to take or inherit from each other." In support of the decision announced the court says: "The case (*Grubb's Appeal*, 8 P. F. Smith [Pa.] 55) certainly establishes that the statute does not legitimatize illegitimate children, even so far as their mothers and next of kin are

concerned. The application of this principle requires us to hold that where a bastard dies before his mother, and therefore never has taken or inherited from her, he cannot transmit a right to her descendants which never was in him. The words certainly do not refer to a mere possibility of future inheritance. Had the Legislature intended not merely that illegitimate children but the issue of illegitimate children should inherit, it would have been easy to have said so; but they seem carefully to confine the operation of the enactment to children taking from their mother, so as to exclude the case of grandchildren and grandmothers." The language of this statute is perhaps materially different from ours; and in neither of the cases just cited does the court seem to consider the statute as part of a system of laws regulating descents, whatever their general statutes may have been. It is worthy of note, also, that *Curtis v. Hewins* was decided 65, and *Steckel's Appeal* 41, years ago, when legislative and especially judicial sentiment was still subject to the spirit of ancient intolerance which reluctantly acknowledged that a bastard was a member of the human family.

The cases of *Pratt v. Atwood,* 108 Mass. 40, *Berry v. Owens,* 5 Bush (Ky.) 452, and *Edwards v. Gaulding,* 38 Miss. 118, cited for appellants, are not in point, since they only hold that a bastard's legitimate children, he being dead, cannot inherit from collaterals on the mother's side under statutes giving their bastard parent the right to inherit from his mother. To such a case the rule of strict construction legitimately applies, since the right of such children to inherit cannot be broader than that of the parent whose share of the inheritance they claim by representation alone. This distinction is so pointedly stated in *Edwards v. Gaulding,* 38 Miss. 118, 127, supra, as to really make of that case

an authority against appellants' contention. As shown by the headnote, the precise point decided is that "the legitimate children of a bastard who died previous to the passage of the act of the 23d February, 1846, are not entitled under the provisions of that act to inherit the estate of their illegitimate uncle or aunt dying after the passage of the act." We quote from the opinion: "If these parties claim at all, it must be by direct force of the statute, and not by virtue of that provision of the law of descents, which enables a child to take his deceased parent's share of an estate, because at the time of Joseph Harton's decease he had no right or capacity of inheritance to transmit to his children. * * * The words of the act of 1846 are ' * * * ' etc. These words can confer no right upon these petitioners, because they are not illegitimate, and therefore they do not take directly by force of the statute, nor, as I have before shown, can they take as representing their father, because at the time of his death he had no capacity or possibility of inheritance. * * * 'Descent' or 'hereditary possession' is the title by which on the death of his ancestor a party acquires his estate by right of representation as his heir.—4 Kent, Comm. 374, 394. But, where the ancestor or other through whom the inheritance must be claimed did not have inheritable blood, there can be no title acquired by representation.—4 Kent, Comm. 15, 54." We infer from the entire opinion that had the statute made the bastard · parent the heir not only of his mother, but of his kindred on her side, the right of these children to represent their bastard father, and take what he would have taken, if alive, would have been recognized.

Construing this same Mississippi statute in a case arising under it in this state, this court said by Walker, J.: "It was designed to remove the disability incident

to their bastardy, so far as to allow them to take under
their mothers, and to permit them to stand as heirs
and distributees of their mother under the statute of
descents and distributions. They are as fully provided
for as though the statute had in express terms repealed
the disability of bastardy, as to the inheritance and dis-
tribution of the mother's estate, and placed them on an
equal footing with legitimate children." True, the
Mississippi statute prescribed inheritance "according
to the statute of descents and distributions" there in
force, and our statute contains no such language.

But this court has declared that "these sections of
the Code are not complete within themselves, but are
a part of an entire system of statutes on the subject of
descents and distributions, and are to be construed in
pari materia with them."—*Butler v. Elyton Land Co.,*
84 Ala. 384, 388, 4 South. 675. In this last case the
view of the Virginia Court of Appeals as to the object
and policy of these statutes is quoted and fully ap-
proved, in the language of Parker, J., viz., that they are
designed to make bastards "quasi legitimate on the ma-
ternal side, to give the bastard a mother and maternal
kindred, and to make them heritable from each other
in the order prescribed by the law of descents, as if the
bastard had been lawfully begotten of such a mother.
It places this line in respect to inheritance precisely in
the situation it would be in if one born in lawful wed-
lock should die leaving no paternal kindred."—*Garland
v. Harrison,* 8 Leigh (Va.) 368.

It is not reasonable to suppose that our Legislature
in adopting and repeatedly readopting our present stat-
utes on this subject were unacquainted with or in-
sensible to these policies and principles thus declared
by this court in *Alexander v. Alexander,* 31 Ala. 241,
and in *Butler v. Elyton Land Co.* We approve the rea-

soning of the Kentucky court in the case of *Sutton v. Sutton, supra*: "It follows from this in our opinion that the legitimate child of a deceased bastard may inherit from the bastard's mother, and that such a child succeeds to the parent's right of inheritance from a bastard brother or sister. The legitimate child of a bastard has all the rights of any child as to the parent, and the bastard parent can transmit to his or her legitimate child all the rights he or she has equally with any other parent." If it be conceded that the rule of strict construction forbids the enlargement of a bastard's rights beyond the strict letter of the statute, nevertheless, we are dealing here with the rights of legitimate children, and we can discover no reason either in principle or in policy why the current of heritable blood made by the statutes to flow between mother and child should be intercepted and destroyed on the threshold of a new and innocent generation.

Our statutes (sections 3760 and 3761) are placed in the Code as a part of the general system of laws governing descents and distributions. And, if it be inquired why in express terms they failed to make the bastard and his descendants the heirs of his mother, the obvious answer is that by their very terms they make the bastard as much the child and heir of his mother as if he were born in lawful wedlock; that is, fully legitimates him for the purpose of heirship and succession, and as though he never were a bastard. This being accomplished by these statutes, it must be intended, by their association with the other general statutes of descent and distribution, that further legitimate descent in the bastard line is sufficiently cared for by those general statutes, if such specification were needed. Indeed, it would seem that considerations of verbal economy and statutory consideration would forbid a needless repeti-

tion of any of those provisions. We have not been inadvertent to section 3766 of the Code of 1907, which, in effect, legitimates slave marriages, and by its terms is given a retrospective operation.

We have preferred, however, to base our decision on the principles above stated, and thereby avoid a resort to the last clause of this statute, the application of which to the present case might necessitate a determination of its constitutionality—an issue which it is our duty to avoid if possible.

Upon a very full consideration of the question presented, we are of the opinion that the judgment of the city court should be affirmed.

Affirmed.

ANDERSON, MAYFIELD, and SAYRE, JJ., concur.

ANDERSON, J., concurs in the affirmance and in the opinion, except he does not commit himself to the view that under sections 3760 and 3761 of the Code, bastards cannot inherit from the mother's collateral kindred; that being unnecessary to the decision of the case.